Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

Hassan A. Zavareei (State Bar No. 181547)
Kristen G. Simplicio (State Bar No. 263291)
**TYCKO & ZAVAREEI LLP**
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Katie Ogdon, an individual, on behalf of herself and all others similarly situated, | No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF:** |
| vs. | |
| Grand Canyon University, Inc., an Arizona corporation, and Grand Canyon Education, Inc. d/b/a Grand Canyon University, a Delaware corporation, | **(1)  FALSE ADVERTISING LAW;**<br>**(2)  UNFAIR COMPETITION LAW;**<br>**(3)  CONSUMER LEGAL REMEDIES ACT;**<br>**(4)  UNJUST ENRICHMENT** |
| Defendants. | |

On behalf of herself and all persons similarly situated, Plaintiff Katie Ogdon submits this Class Action Complaint against Grand Canyon University, Inc. and Grand Canyon Education, Inc. (collectively referred to herein as "Grand Canyon University"), alleging as follows:

## INTRODUCTION AND PARTIES

1.       Plaintiff brings this action to hold Defendants accountable for violating California law by unlawfully, unfairly, and fraudulently enrolling students in professional degree programs that are not accredited in such a way so as to qualify the students for licensure and/or practice in California. This deceptive practice results in students taking classes and paying – or becoming indebted for – thousands of dollars in tuition for academic programs that will not be accepted for professional licensure.

2.       Defendants perpetrate this scheme by aggressively marketing their unaccredited programs to potential students through financially-motivated salespeople Defendants term "advisors." These "advisors" are trained and incentivized by Defendants to push prospective students to take courses even when the courses will not qualify the students for licensure. Moreover, the federal government – which funds nearly all tuition for Grand Canyon University students through various federal student loan programs – should not be wasting hundreds of millions of dollars each year on unaccredited degree programs which do not advance students or their professional careers.

3.       Plaintiff Katie Ogdon is one victim of this scam. She is a citizen of the State of California who signed up for Grand Canyon University's Master of Science in Psychology with an Emphasis in Health Psychology program. She only did so based upon the assurances of Defendants' "advisors" and other personnel that the program was suitable for her intended career, which was to be a mental health therapist in the State of California. Two years and tens of thousands of dollars in tuition later, she discovered that Grand Canyon University was not accredited in such a way so as to qualify her and those similarly situated for professional licensure and/or practice in California and thus she could not become a California-licensed mental health therapist as she was led to believe.

4.       No student would ever knowingly enroll in a professional degree program and expend years taking classes and completing coursework, while becoming indebted for tens of thousands of dollars in federal student loans, in order to obtain a degree that is not accepted because the program is not accredited for its intended purpose. Furthermore, because accredited schools will not accept the

Grand Canyon University course credits, all of the effort and expense is a complete waste of the students' precious time and resources.

5.      Defendants enroll thousands of Californians each year in unaccredited programs, primarily in the educational and healthcare fields. Students are induced to spend time away from their families and jobs – often hundreds or even thousands of hours – and take out federal student loans that they will be saddled with for decades, for zero return. The human misery caused by Defendants' scheme is incalculable. This case aims to obtain some measure of recompense for Defendants' deceptive acts and enjoin them going forward.

6.      Defendant Grand Canyon University, Inc. ("Grand Canyon") is an Arizona corporation registered to do business in California.   Grand Canyon can be served with process via its agent in the State: InCorp Services, Inc., 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362-7354.

7.      Grand Canyon was a small non-profit Christian college in Arizona until 2004 when it was sold to a for-profit company.  Investors and officers of Apollo Management and another online school, University of Phoenix – all of whom had profited handsomely from for-profit educational ventures – were brought in to run Grand Canyon. The school grew rapidly, primarily via the aggressive marketing of its online programs. Online programs are exponentially more profitable than running a brick and mortar school because expenses for teacher salaries and overhead are a small fraction of tuition.

8.      Grand Canyon was able to set itself apart from other online colleges based on its Christian affiliation, its nonprofit status, and the fact that it had a real campus in Arizona, including sports teams. Unfortunately, as shown below, neither the school's purported Christian affiliation nor its Arizona campus provide any benefit to online students.

9.      Defendant Grand Canyon Education, Inc. ("GCE") is a Delaware corporation and is the publicly traded holding company that operates Grand Canyon. It trades on the NASDAQ exchange under the symbol "LOPE," which is based on the school's mascot, the antelope. The stock has surged in recent years and has recently traded as high as $132 per share, giving it a ***market value of over $6 billion***. The company reported profits for 2018 in the amount of ***$229,000,000***. GCE is registered to

do business in California and can be served with process via its agent: CSC, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

10.     GCE was started in 2003 before the buyout of Grand Canyon. It now claims that it is not affiliated with Grand Canyon, even though the two corporations share the same leadership and the vast majority of GCE's business is tied to Grand Canyon. As described below, GCE has recently completed a series of complex corporate transactions which (at least arguably) leave it as a for-profit educational services company and Grand Canyon as a "non-profit" school. These moves were made in part to mislead prospective students into thinking the school is a non-profit institution.

11.     Grand Canyon and GCE have structured themselves to create massive wealth for their leaders. For example, Grand Canyon President Brian Mueller consistently makes over two million dollars a year in total compensation. Several other Grand Canyon executives have similarly excessive pay and perquisites. Together they own tens of millions of dollars worth of stock in GCE, Grand Canyon's for-profit arm, from which they profit. For example, Grand Canyon President Mueller regularly cashes in stock options or stock awards from the for-profit arm worth millions of additional dollars. In 2019, for example, he sold nearly $5,000,000 worth of stock.  Maintaining and increasing this level of compensation and the value of their stock holdings is a driving force behind the fraudulent scheme described herein.

12.     While Grand Canyon is the front that purports to offer nonprofit educational programs, GCE employs the marketing and recruiting army, which performs the "dirty work" of misleading potential students into signing up for professional programs that are not accredited in the relevant states. It cannot be disputed that Grand Canyon and GCE are both fully aware of, and indeed are active participants in, the scheme outlined herein. After all, Brian Mueller serves as both the President of Grand Canyon and – shockingly – as the President, Chairman, and CEO of GCE.

13.     At all times mentioned herein, Defendants acted as the principal, agent, or representative of each other, and in doing the acts herein alleged, each Defendant was acting within the course and scope of the agency relationship with the other, and with the permission and ratification of the other.

14.   At all relevant times, Defendants have controlled, directed, formulated, known and/or approved of, and/or agreed to the various acts and practices of each other.

15.   Whenever reference is made in this Class Action Complaint to any act of any Defendant or Defendants, the allegation shall mean that the Defendant or Defendants did the acts alleged either personally or through the Defendant's or Defendants' officers, directors, employees, agents and/or representatives acting within the actual or ostensible scope of their authority.

16.   At all times mentioned herein, each Defendant knew that the other Defendant was engaging in or planned to engage in the violations of law alleged in this Class Action Complaint. Knowing that the other Defendant was engaging in such unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts alleged, and there by aided and abetted the other Defendant in the unlawful conduct.

17.   Each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Class Action Complaint. Additionally, one or both of the Defendants acted as the agents of each other, and all Defendants acted within the scope of their agency if acting as an agent of the other.

18.   Each Defendant is a "person" as defined in Business and Professions Code section 17201.

19.   All of the conduct that forms the basis for this Class Action Complaint has been undertaken by Defendants by and through their agents, employees, officers, or others acting on their behalf.

## JURISDICTION AND VENUE

20.   This Court has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class embers exceed $5 million, exclusive of interests and costs, and at least one member of the proposed class is a citizen of a different state than Grand Canyon.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

<u>**GENERAL FACTUAL ALLEGATIONS**</u>

22.     Grand Canyon University is a rapidly growing for-profit college.  Defendants recently engaged in some corporate trickery, however, in order to claim that Grand Canyon is a "non-profit." The transactions are vaguely described in Grand Canyon's Annual Report for 2018 as follows:

> On July 1, 2018, the Company sold the University to Grand Canyon University, an independent Arizona non-profit corporation formerly known as Gazelle University, as further described below (the "Transaction").  As a result of this Transaction, GCE became an educational services company focused on providing a full array of support services to institutions in the post-secondary education sector.

The Annual Report then continues for thousands of words to describe the ornate details of how a multi-billion dollar business can justify calling itself a non-profit. Suffice it to say that Grand Canyon continues to be a for-profit business in all substantive respects.

23.     That Grand Canyon is by no means a true non-profit is proven on page 45 of the same 2018 Annual Report which listed $229 million in profits:

| | *2018* | *2017* | *2016* | *2015* |
|---|---|---|---|---|
| *Net income [**in millions**]* | *$229,011* | *$203,319* | *$148,514* | *$131,411* |

Plainly, Grand Canyon is a cash machine for its owners and executives and the profits are rapidly climbing every year.

24.     In order to keep profits climbing, however, Grand Canyon needs to sign up more and more students. In 2018, enrollment climbed from 90,297 to 97,369. This followed an even larger increase in student enrollment as described in 2017 Annual Report:

> Our enrollment at December 31, 2017 was approximately 90,300, representing an increase of approximately 10.2% over our enrollment at December 31, 2016.  Our net revenue and operating income for the year ended December 31, 2017 were $974.1 million and $282.8 million, respectively, representing increases of 11.5% and 19.2%, respectively, over the year ended December 31, 2016.  Our net revenue and operating income for the year ended December 31, 2016 were $873.3 million and $237.2 million, respectively, representing increases of 12.2% and 12.8%, respectively, over the year ended December 31, 2015.

This means Grand Canyon is growing each year by the size of a mid-sized university.

6

25.     The vast majority of Grand Canyon students are online students who never set foot on the school's Arizona campus. According to Defendants' 2017 financial reporting, for instance:

> At December 31, 2017, we had 90,297 students enrolled in our courses, of which 71,455, or 79.1%, were enrolled in our online programs, and 18,842, or 20.9%, were enrolled in our ground programs.  Of our students in online programs, which were geographically distributed throughout all 50 states of the United States, and Canada, and in professional studies programs, 86.1% were age 25 or older.  Of our traditional on-campus students, 95.6% were under age 25 and, although we draw students from throughout the United States, a majority were from Arizona.

With 7,000 more students added in 2018, and only 20,000 students at the Arizona campus, Grand Canyon now has over 80,000 online students. Indeed, a Grand Canyon press release from August 19, 2019 confirmed that the school has more than 80,000 online students. Each online student who enrolls at Grand Canyon results in an average of over $3,000 in annual profit.

26.     The most important part of Defendants' operation is the highly automated system of obtaining federal student loans and grants. Defendants concede that over 71% of Grand Canyon's funding comes from the federal government:

> During fiscal 2017 and 2016, we derived approximately 71.5% and 72.3%, respectively, of our net revenues (calculated on a cash basis in accordance with Department of Education standards currently in effect) from tuition financed under the Title IV programs.  The primary Title IV programs that our students receive funding from are the Federal Direct Loan program or FDL Program, and the Federal Pell Grant, or Pell, Program.

Many students are not even aware that the school is procuring loans on their behalf. Before they know it, they are tens of thousands of dollars in debt without ever being informed of the total amount of debt that they are accruing. Grand Canyon employees are taught to gloss over the details of loans that they procure for students. For example, they rarely provide the total amount of debt accrued or offer any information on the anticipated amount or duration of loan payments. Since loan repayments do not begin until students either graduate or quit the program, most students are not aware of the enormity of the debt burden they are assuming as a Grand Canyon online student.

27.     Over half of Grand Canyon's 80,000 online students are working adults seeking master's or doctoral degrees in order to advance in their profession. Most such students must graduate from an accredited program to gain the benefit they are seeking from schooling. Most notably, degrees in education and healthcare are not accepted by employers or California

governmental entities (such as school systems or state professional standards boards) unless accredited.

28.     In order to maintain its high level of profitability, Grand Canyon simply cannot devote the level of resources which are required to obtain accreditation in many fields. For example, Grand Canyon's online professors are generally not paid enough to make Grand Canyon their full-time job. Grand Canyon leaders have confirmed that faculty compensation is approximately 15% of tuition, not 70% like most colleges and universities. Grand Canyon instructors generally work another job (or multiple other jobs) and teach at Grand Canyon "on the side." Most of them do not acknowledge their work as a Grand Canyon "professor" on their résumés or LinkedIn pages. As a result of the low pay and need for other full-time employment, Grand Canyon faculty are not able to complete the tasks expected of faculty by many accrediting agencies, such as: preparation of proper course outlines and materials; delivering tailored lectures and answering student questions; and assisting students with the material at regularly-scheduled times. As must be expected based on Grand Canyon's low expenditure on faculty, the school is not able to hire and retain excellent professors. In addition to low pay, Grand Canyon and GCE also offer no benefits to the vast majority of instructors, such as no possibility for tenure, no pension or 401(k) matching, and no health insurance coverage. Faculty quality understandably suffers as a result.

29.     Grand Canyon also does not provide students and faculty with the level of resources deemed essential by many California accrediting agencies. In addition to poor faculty pay, and negligible benefits, training and support does not meet minimum standards. Class materials are also substandard, often amounting to links to Internet-based websites and information. "Hands on" work is impossible or, at the very least, much less of an emphasis than in most accredited programs.

30.     Testing and other performance evaluations are not reputable at Grand Canyon. Many students complain that grading in courses is random with the main emphasis on keeping students at Grand Canyon, even when they do not show knowledge of the coursework.

31.     Grand Canyon students also often do not have the requisite level of educational background to meet standards established by most California accrediting agencies. Grand Canyon accepts nearly every student. Many students enroll in graduate programs without basic language skills.

Grand Canyon, however, does not offer remedial programs to help professional students get "up to speed." Accrediting agencies are well aware that the level of student preparation is below standard and that even those students who are capable of excelling cannot benefit from interaction with other similar students.

32.     For these and numerous other reasons, California accrediting agencies justifiably have not accredited many Grand Canyon professional degree and certificate programs and do not accept Grand Canyon degrees or coursework.

33.     Without the form of accreditation required to qualify the students for licensure and/or practice in their chosen fields Grand Canyon online degree programs are worthless to students in most fields. The largest group of Grand Canyon online students are in the education field. Teachers and other education professionals seek graduate degrees in order to increase their pay and improve their chances for promotions. In California (and in every other state), however, degree programs must be accredited. Otherwise, "diploma mills" will simply issue degrees and teachers will obtain unearned benefits. Most Grand Canyon educational master's and doctorate programs are not accredited in such a way so as to qualify the students for licensure and/or practice in California or most other states. Admittedly, Grand Canyon programs are generally accredited in Arizona and are sometimes accredited in other states. No California teacher seeking a graduate degree in education, however, would ever knowingly invest time or money (or indebtedness) into an unaccredited Grand Canyon program of study.  None of the benefits they are seeking from the degree are available to them, whereas they could just as well take classes from dozens of accredited programs.

34.     The same is true in Grand Canyon's second largest field of online graduate study, healthcare. For obvious reasons, California (and all other states) require healthcare professionals to have graduated from reputable and accredited programs before beginning certain professions in healthcare, including therapists, counselors, nurses, technicians, and even physicians and dental assistants. Most Grand Canyon healthcare degree programs are not accredited in California or most other states. As such, no California resident would ever knowingly invest time or money (or indebtedness) into such an unaccredited Grand Canyon program of study.

35.     Defendants are well aware that they are enrolling students under false pretenses. Their recruiters – known as "advisors" – are trained not to bring up the subject with prospective students. They are taught how to omit discussion of state accreditation and avoid directly answering questions about the topic if asked by prospective students.

36.     For example, when prospective students ask "is this program accredited?" recruiters are taught to respond "absolutely, Grand Canyon is fully accredited," thus putting potential students at ease. The recruiters thus knowingly sign up students for programs and courses for which the student could not possibly gain any benefit.

37.     A good example of Defendants' deception can be seen in Exhibit A hereto.  This online resource published by Defendants lists several masters programs, including the one in which Plaintiff enrolled.  It plainly states:

> **Accreditation**
> The Higher Learning Commission and its predecessor have continually accredited Grand Canyon University since 1968, obtaining its most recent ten-year reaccreditation in 2007. In addition, the university has obtained specialized accreditations and approvals for our core program offerings.

38.     This is intended to comfort prospective students that their professional degree programs are accredited because Defendants knew that Plaintiff and other Class members would not knowingly sign up for unaccredited professional programs.  Thus, trickery and lies of omission had to be utilized.  Defendants intentionally and improperly failed to disclose the truth in order to induce Plaintiff and other Class members to enroll. Such conduct is obviously unethical and improper but it is also illegal. The federal government prohibits Grand Canyon (and any other school receiving federal funds) from engaging in "substantial misrepresentations." As conceded in Grand Canyon's Annual Report, the Department of Education "has defined a misrepresentation as any statement made by the institution or a third party that provides educational programs, marketing, advertising, recruiting, or admissions services to the institution that is false, erroneous or has the likelihood or tendency to deceive." Such statements can pertain to "its educational program, its financial charges, or the employability of its graduates." Defendants concede "we are subject to this regulation."

39.     Federal regulations also prohibit myriad other representations that trick students into believing that a school is accredited and for specific purposes, including those misrepresentations

pertaining to "[w]hether the academic, professional, or occupational degree that the institution will confer upon completion of the course of study has been authorized by the appropriate State educational agency."

40.     As shown below, multiple aspects of California law provide similar protections. Defendants simply are not allowed to misrepresent their programs in order to profit from prospective California students.

41.     As to every California-residing online student who is enrolled in a Grand Canyon program not accredited in California, Grand Canyon has made a "substantial misrepresentation."

42.     No student would ever knowingly enroll in an unaccredited professional degree program. In nearly every situation, there are literally dozens of certified programs to choose from. Likewise, no college or university of integrity would ever knowingly enroll a student in an unaccredited program. For example, if a potential student from California seeks to become a therapist, and the school's therapist program is not accredited in California, then the student should never be enrolled in the unaccredited program. Such an enrollment can only be the product of misrepresentation and willful deception.

43.     Hundreds of complaints lodged by students and former students with the Better Business Bureau and various online forums provide further evidence of Defendants' deception. For example, this complaint was lodged with the Better Business Bureau on March 14, 2019:

> They told me that they were accredited in South Carolina and they are not.  I started class on Sunday and have been trying to get out of the school for three days.  Initially they apologized for lying to me and said that they were going to get me a refund and then someone else called me and insisted that they are accredited but I have to file for a change.  That is NOT being accredited in my state.  I was lied to and now they are trying to collect 935$ from me for dropping out of the class when I had no idea that they were not accredited in my state and they lied to me.  They told me they were.  The only reason I found out was because I saw on their website looking for information for an assignment that they are only accredited in 19 states and South Carolina is not one. It took me three phone calls and three emails to FINALLY get out of the school and I totally feel cheated!  How can you do this to an out of state student with a low income and then expect them to pay for your services when you lied to them from the very beginning?  That is not my fault, that is their fault for being dishonest!

44.     By way of further example, this complaint appeared on www.gradreports.com and was posted on May 3, 2018:

> So I just graduated April 2018, and I received the Masters in Education leading to a credential in multiple subjects and frankly, I am highly disappointed that the school

11

lacks communication regarding specific requirements from outside states. I live in CA and I was never told that I needed a CLAD authorization which is an authorization to teach language learners. (their SEI requirement) which caused me to add additional testing after the program ended. Do not waste your time going here if you live in CA. CA's schools has [sic] this authorization embedded in their teacher programs so I would go that route. If you go here, you will end up taking additional courses which will cause you to add to your debt. Now, I have to pay 3000 for a course in CLAD certification and add 9-12 months which I could be searching for employment. So disappointed and sad.

45.     The same scheme has clearly been in effect for years. This complaint was listed on www.onlinedegreereviews.org on May 4, 2016:

I am at the end of the first class that Grand Canyon University said I must take and pay for. But, the degree I wanted was social work and I was told I could take the social work class, but I had to find somewhere to get the hours I needed as volunteer services which was 400 hours. I called the board for social services in my area and found out that GCU is not accredited for social work. So when I contacted my student adviser. She told me that the degree does not lead to a license. Of course I asked her what was the degree valid for if I can not get a license. This was something I truly wanted to do. To help many in the community who are less fortunate. Now, they are telling me that I will have to pay for three classes even though I have not taken nothing but one class. So, now I am stuck at their school that lied to me about having a relevant social worker program. I am so disappointed and I believe that this type of fraud to students who are receiving student loans that are guaranteed by the US government should be looked into. They should not be able to commit fraud at their leisure.

46.     This complaint was listed on www.onlinedegreereviews.org on June 16, 2014:

I live in Illinois and was assured by the recruiter that the University's program would be accepted. I contacted the state, they never responded to me. I completed the courses and earned me masters...then months later, Illinois tells me they do not recognize them. Have a masters I can't use now.

## PLAINTIFF'S FACTUAL ALLEGATIONS

47.     Plaintiff stands in the shoes of thousands of other victims of Defendants' improper practices. She would never have enrolled at Grand Canyon if she had known the program she was entering was not accredited. Defendants knew Plaintiff was being enrolled in programs that were worthless to her, but they proceeded to sign her up purely based on greed.

48.     Ms. Ogdon lives in Fresno, California. Since prior to her enrollment at Grand Canyon, Ms. Ogdon's goal has been to be a mental health therapist.

49.     In the fall of 2017, Ms. Ogdon began to research masters programs in order to pursue her goal of becoming a mental health therapist.

50.     In making her decision between Grand Canyon and graduate degree programs at other schools, Ms. Ogdon spoke at length with Grand Canyon University advisor Michael Granitz. During

these conversations, she informed him that her goal was to become a mental health therapist. At all times during their discussions, Mr. Granitz knew that Ms. Ogdon lived in California, where she intended to practice after graduation, and their conversations about her goal of being a mental health therapist was in regards to practicing in California, where she wanted to live and work. On behalf of Grand Canyon and GCE, Mr. Granitz assured Ms. Ogdon that Grand Canyon had an excellent program that would meet her needs. He falsely assured her the program was accredited both by the American Psychological Association and California licensing authorities. He enrolled Ms. Ogdon in the Master of Science in Psychology with an Emphasis in Health Psychology program.

51.    Unbeknownst to Ms. Ogdon at the time, this Grand Canyon program was not accredited in California and thus could not provide her with the education needed to become a mental health therapist.  In fact, it does not even come close to satisfying California's rigorous accreditation standards.

52.    Mr. Granitz was not the only advisor who was trained by Defendants to mislead students about accreditation and its suitability as a program to prepare her to practice her desired profession in California.  Before she began at Grand Canyon in October 2017, Ms. Ogdon also spoke with another advisor – Student Services Counselor Sabrina Landa – about Grand Canyon's accreditation in the State of California to ensure that this program was what she needed to become a mental health therapist.

53.    On behalf of Grand Canyon and GCE, Ms. Landa assured Ms. Ogdon that the program that she enrolled in would qualify her for licensure in the State of California.  Ms. Landa had been trained by both Defendants to mislead prospective students about whether Grand Canyon programs were accredited.

54.    Based on these assurances from Defendants' representatives, Plaintiff decided to allow herself to be enrolled in Grand Canyon's Master of Science in Psychology program.

55.    In May 2019, when Ms. Ogdon was in her final class for the program, she reached out to Defendants via her Student Services Counselor at that time, Chelsea Bebb, for assistance with her California licensure.

56.    Ms. Bebb refused to assist Ms. Ogdon with the California licensure process.

57.     After digging into the situation further, Ms. Ogdon discovered that Grand Canyon was not accredited in California and that she could not become a California-licensed mental health therapist as she had been led to believe by Defendants and their representatives.

58.     When Ms. Ogdon confronted Ms. Bebb and her supervisor Jordan about this development, they blamed the situation on "confusion with her first advisor."

59.     Defendants even tried to talk Ms. Ogdon into taking **another** graduate program, a Master's in Clinical Mental Health Counseling, even though such a change would have resulted in hundreds of further wasted hours, tens of thousands in additional student loans, and, ultimately, the same licensure problems in California.

60.     Ms. Ogdon finished her degree in May 2019 with a 3.97 grade point average (despite working two jobs and barely making ends meet).  She has a diploma (which she had to pay a total of $300 to procure from Defendants) but nothing else to show for her efforts.

61.     When Ms. Ogdon finished her degree program at Grand Canyon, she had 36 degree units.  Based on research conducted by Plaintiff, it was determined that California requires a post-graduate degree program with 60 degree units in order to obtain licensure in mental health therapy. Thus, the Grand Canyon program was woefully insufficient for Ms. Ogdon's needs from the start.

62.     As a result of Ms. Ogdon's reliance on Defendants' numerous misrepresentations, Plaintiff incurred over $22,000 in federal student loan debt to obtain her degree.

63.     Ms. Ogdon has struggled to find some use for her thousands of hours of work and enormous student loan debt. When she learned of the deception and that California would not accept her degree, she immediately tried to transfer her credits to an accredited school.  She learned that no accredited school will give any credit for Grand Canyon courses.

64.     Plaintiff has been paying her student loans.  Recently, she has contacted the federal government in order to object to her student loan debt based on Grand Canyon and GCE's many misdeeds. Ms. Ogdon filed her "Borrower Defense" claim with the federal government requesting to have the loans forgiven. The request is pending.

65.     Ms. Ogdon would never have enrolled with Grand Canyon if Defendants had not informed her that the master's program was accredited and would meet all of her needs as a

California therapist candidate. Grand Canyon should never have pushed her to enroll – or even allowed her to enroll – in a program that failed to meet any of her needs.

66.     Ms. Ogdon never would have stayed in the program if she knew it was not accredited. Ms. Ogdon should never have been put through this nightmare. Defendants' conduct was unethical, immoral, and illegal.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this class action on behalf of herself and the following class of persons:

> All Grand Canyon University students who are citizens of the State of California who have been enrolled in an online professional graduate degree or certificate program that is not accredited in California.

68.     Excluded from the Class are Defendants' officers, directors, affiliates, representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

69.     The time period for the Class is the number of years immediately preceding the date on which this Class Action Complaint is filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendants cease their improper conduct.

70.     <u>Numerosity</u>:  The members of the proposed Class are so numerous that individual joinder of all members is impracticable.  Filings in 2019 show that the total student population at Grand Canyon now exceeds 100,000. Public filings and releases by Grand Canyon show that over 80,000 of its students are online students and over 50% of online students are graduate students pursuing master's and doctoral degrees. Grand Canyon's most popular programs are its post-graduate degrees for teachers and healthcare workers. Grand Canyon's public filings state that its online students are spread proportionally throughout the country. Since 12% of the United States population lives in California, it can be expected that approximately 5,000 California residents are currently enrolled in unaccredited professional degree programs. Thousands of additional students were victims in recent years, like Plaintiff. Thus, many thousands of current and former students are likely included in the Class. The exact number and identities of the members of the proposed Class are unknown at this time and can be ascertained only through appropriate discovery.

71.     <u>Common Questions of Law and Fact Predominate</u>:  There are many questions of law and fact common to Plaintiff and the Class and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include, but are not limited to:

      a.  Do Defendants knowingly enroll students in professional programs which are unaccredited in California?

      b.  Do Defendants' practices amount to fraud or misrepresentation?

      c.  Did Defendants violate federal law or regulations?

      d.  Did Defendants violate California law?

      e.  Were Defendants unjustly enriched as a result of their improper conduct?

72.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by the actions of Defendants. Defendants' conduct as described herein is the same or substantially the same for Plaintiff and all members of the Class. Defendants have established systematic and automated policies and practices to govern recruitment and the manner in which staff enroll students in non-accredited professional programs. Thus, the experiences of Plaintiff are typical.

73.     <u>Adequacy of Representation</u>:  Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

74.     <u>Superiority of Class Action</u>:  Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary

adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

75.     <u>Risk of Inconsistent or Varying Adjudication</u>:  Class treatment is proper and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendants as the parties opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

76.     <u>Action Generally Applicable to Class as a Whole</u>:  Defendants, as the parties that may potentially oppose certification of the Class, have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## **FIRST CAUSE OF ACTION**

## **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17500**

## **(UNTRUE OR MISLEADING REPRESENTATIONS)**

77.     Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

78.     From a date unknown to Plaintiff and continuing to the present, Defendants, and each of them, have engaged in and continue to engage in, aided and abetted and continue to aid and abet, and conspired to and continue to conspire to engage in acts or practices that constitute violations of Business and Professions Code § 17500 *et seq.*, by making or causing to be made untrue or misleading statements with the intent to induce members of the public to purchase Defendants' services. Defendants' untrue or misleading representations include, but are not limited to, statements and advertisements to Plaintiff and members of the Class that Grand Canyon University's professional graduate degree and/or certification programs are accredited in California.

79.     At the time the representations set forth in the preceding paragraph were made, Defendants knew or by the exercise of reasonable care should have known that the representations were untrue or misleading.

80.     As a result of Defendants' untrue or misleading representations, Plaintiff and the members of the Class are entitled to an order, pursuant to Business and Professions Code § 17535, enjoining such future conduct by Defendants and such other orders and judgments that may be necessary to provide restitutionary disgorgement of Defendants' ill-gotten gains and to restore to any Class member all monies paid as a result of Defendants' false or misleading statements.

**SECOND CAUSE OF ACTION**

**VIOLATIONS OF BUSINESS AND PROFESSIONS CODE § 17200**

**(UNFAIR COMPETITION)**

81.     Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

82.     Defendants, and each of them, have engaged in and continue to engage in, have aided and abetted and continue to aid and abet, and have conspired to and continue to inspire to engage in business acts or practices that constitute unfair competition as defined in the Unfair Competition Law, Business and Professions Code § 17200 *et seq.*, in that such business acts and practices are unlawful, unfair, and fraudulent within the meaning of that statute.

83.     The business acts and practices engaged in by Defendants that violate the Unfair Competition Law include:

    a.   Providing Plaintiff and members of the Class with untrue, misleading, unreliable, and/or inaccurate information concerning the accreditation of Grand Canyon's professional graduate degree or certification programs in California;

    b.   Omitting material facts concerning the accreditation of Grand Canyon's professional graduate degree or certification programs in California in communications with Plaintiff and members of the Class; and

    c.   Enrolling Plaintiff and members of the Class in professional graduate degree or certification programs that were not accredited in California.

84.  These business acts and practices are unlawful because they violate laws including:

a.  Business and Professions Code § 17500, as set forth herein;

b.  34 C.F.R. 668.72(a), which prohibits "[m]isrepresentations concerning the nature of an eligible institution's educational programs [. . . including. . .] false, erroneous or misleading statements concerning . . . [t]he type(s), specific source(s), nature and extent of its institutional, programmatic, or specialized accreditation";

c.  34 C.F.R. 668.72(c), which prohibits "[m]isrepresentations concerning the nature of an eligible institution's educational programs [. . . including. . .] false, erroneous or misleading statements concerning . . . [w]hether successful completion of a course of instruction qualifies a student . . . to receive, to apply to take or to take the examination required to receive, a local, State, or Federal license, or a nongovernmental certification required as a precondition for employment, or to perform certain functions in the States in which the educational program is offered, or to meet additional conditions that the institution knows or reasonably should know are generally needed to secure employment in a recognized occupation for which the program is represented to prepare students";

d.  34 C.F.R. 668.72(g), which prohibits "[m]isrepresentations concerning the nature of an eligible institution's educational programs [. . . including. . .] false, erroneous or misleading statements concerning . . . [t]he availability, frequency, and appropriateness of its courses and programs to the employment objectives that it states its programs are designed to meet";

e.  34 C.F.R. 668.72(n), which prohibits "[m]isrepresentations concerning the nature of an eligible institution's educational programs [. . . including. . .] false, erroneous or misleading statements concerning . . . [w]hether the academic, professional, or occupational degree that the institution will confer upon completion of the course of study has been authorized by the appropriate State educational agency;"

f.  Federal and state laws and regulations, including those preclude misrepresentations to students and potential students and those governing accreditation standards; and

g.   Civil Code § 1770(a)(2)-(3), (5), (7), (9) and (14), as set forth herein.

85.     These business acts and practices are unfair in that Defendants have caused students to pay tens of thousands of dollars, undertake huge credit obligations, and/or spend years of their lives in non-California-accredited professional graduate degree or certification programs that did not assist them in their chosen career path.  These acts and practices violate public policy and are also immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.

86.     These business acts and practices are fraudulent in that Defendants' untrue and misleading representations and omissions regarding the accreditation of their professional graduate degree or certification programs are likely to, and in fact have, deceived the public.

87.     As a result of Defendants' unlawful, unfair, and fraudulent business acts and practices, Plaintiff and the members of the Class are entitled to an order, pursuant to Business and Professions Code § 17203, enjoining such future conduct by Defendants and such other orders and judgments that may be necessary to provide restitutionary disgorgement of Defendants' ill-gotten gains and to restore to any Class member all monies paid as a result of Defendants' conduct.

**THIRD CAUSE OF ACTION**

**VIOLATIONS OF CIVIL CODE § 1770**

**(CONSUMER LEGAL REMEDIES ACT)**

88.     Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

89.     Defendants, and each of them, have engaged in and continue to engage in, have aided and abetted and continue to aid and abet, and have conspired to and continue to conspire to engage in practices that violate the Consumer Legal Remedies Act, Civil Code § 1770 *et seq.*, specifically unfair, deceptive, unlawful, and unconscionable commercial practices in connection with the sale of services to consumers.

90.     Plaintiff and the members of the Class are "consumers" as defined by Civil Code § 1761(d). The professional graduate degree or certification programs promoted and provided by Defendants are "services" as defined by Civil Code § 1761(b).

91.     The practices engaged in by Defendants that violate the Consumer Legal Remedies Act include:

a.  Providing Plaintiff and members of the Class with untrue, misleading, unreliable, and/or inaccurate information concerning the accreditation of Grand Canyon's professional graduate degree or certification programs in California; and

b.  Omitting material facts concerning the accreditation of Grand Canyon's professional graduate degree or certification programs in California in communications with Plaintiff and members of the Class.

*See, e.g.*, Civil Code §§ 1770(a)(2)-(3), (5), (7), (9), (14).

92.     As a result of Defendants' violations, Plaintiff and the members of the Class suffered ascertainable monetary losses in the form of tuition they paid and/or debts they incurred for Defendants' professional graduate program and certification programs (including interest), which they would not have incurred but for Defendants' unlawful practices.

93.     Pursuant to Civil Code § 1782, Plaintiff will notify Defendants in writing of the particular violations of § 1770 and demand that Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and giving notice to all affected customers of their intent to do so. Plaintiff will send this notice by certified mail, return receipt requested, to Defendants' principal places of business, and if Defendants do not comply within 30 days, Plaintiff will amend this complaint accordingly. Until such time, this cause of action seeks only injunctive relief and not damages under §§ 1770 and 1782.

**FOURTH CAUSE OF ACTION**

**Quasi-Contract Claim for Restitution ("Unjust Enrichment")**

94.     Plaintiff restates and incorporates by reference the allegations in all paragraphs above as though fully set forth herein.

95.     Defendants were unjustly enriched at the expense of Plaintiff and the other members of the Class, who were enrolled in programs that obviously did not meet their needs and then grossly and inequitably charged tuition which Defendants knew would not result in any benefit for the students.

96.     Plaintiff and the other members of the Class were unjustly deprived of money obtained by Defendants as a result of their undisclosed, unfair, unscrupulous, and unconscionable recruiting and enrollment practices.

97.     It would be inequitable and unconscionable for Defendants to retain the profit, benefit, and other compensation obtained from Plaintiff and the other members of the Class as a result of their wrongful conduct alleged in this Class Action Complaint.

98.     Plaintiff and the other members of the Class are entitled to seek and do seek restitution from Defendants as well as an order from this Court requiring disgorgement of all profits, benefits, and other compensation obtained by Defendants by virtue of their wrongful conduct.

99.     Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

100.    Under the doctrine of unjust enrichment it is inequitable for Defendants to be permitted to retain the benefits they have received, and are still receiving, without justification. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

101.    The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.  As needed, a constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and the members of the Class.

102.    Plaintiff and the members of the Class have no adequate remedy at law.

103.    To the extent required, this claim is alleged as an alternative theory of relief.

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class, requests that this Court:

(a)     Certify this case as a class action and appoint Plaintiff as class representative and Plaintiff's counsel as class counsel;

(b)     Award Plaintiff and the Class declaratory relief as permitted by law or equity;

(c)     Award injunctive relief and/or specific performance to require Defendants to provide Plaintiff and the Class the promised education, credits, and degrees from an institution of higher education accredited by the State of California without additional charge to Plaintiff and the Class.

(d)     Award Plaintiff and the Class actual, incidental, and consequential damages in an amount to be proven at trial, including any and all compensatory damages, punitive damages, restitution, any applicable penalties and interest;

(e)     For an award of all reasonable costs and attorneys' fees incurred by Plaintiff, pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

(f)     For trial by jury of all matters; and

(g)     For such other and further relief as the Court may deem just and equitable.


                                         **TYCKO & ZAVAREEI LLP**

Dated: May 20, 2020                     _/s/ Annick M. Persinger_

                                         Annick Persinger (CA Bar No. 272996)
                                         1970 Broadway, Suite 1070
                                         Oakland, CA 94612
                                         Telephone: (510) 254-6808
                                         Facsimile: (202) 973-0950
                                         apersinger@tzlegal.com

                                         Hassan A. Zavareei (State Bar No. 181547)
                                         Kristen G. Simplicio (State Bar No. 263291)
                                         **TYCKO & ZAVAREEI LLP**
                                         1828 L Street, Northwest, Suite 1000
                                         Washington, District of Columbia 20036
                                         Telephone: (202) 973-0900
                                         Facsimile: (202) 973-0950
                                         hzavareei@tzlegal.com
                                         ksimplicio@tzlegal.com

                                         _Counsel for Plaintiff_

DocuSign Envelope ID: 44E5A82E-F271-4AD3-AC42-945E70489F50

Annick Persinger (CA Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

Hassan A. Zavareei (State Bar No. 181547)
Kristen G. Simplicio (State Bar No. 263291)
**TYCKO & ZAVAREEI LLP**
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Katie Ogdon, an individual, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>Grand Canyon University, Inc., an Arizona corporation, and Grand Canyon Education, Inc. d/b/a Grand Canyon University, a Delaware corporation,<br><br>      Defendants. | No.<br><br>**CONSUMER LEGAL REMEDIES ACT VENUE DECLARATION:** |

1    I, Katie Ogdon, declare as follows:

2        1.    I am a named plaintiff in this litigation.

3        2.    I have personal knowledge of the matters set forth below except as to those matters

4    stated herein, which are based on information and belief, which matters I believe to be true.

5        3.    If called as a witness, I could and would competently testify to the matters included

6    herein.

7        4.    Based on Grand Canyon's University's misrepresentations and omissions, I signed up

8    for Grand Canyon University's Master of Science in Psychology while living in California.

9        5.    I am informed and believe that venue is proper in this Court under California Civil

10   Code Section 1780(d) based on the fact that the transaction at issue, or a substantial portion thereof,

11   occurred in this district.

12   I declare under penalty of perjury under the laws of the United States that the foregoing is true

13   and correct and that this declaration was executed in May 19, 2020 in Fresno, California

14

15

16   By: 

17   Katie Ogdon

18

19

20

21

22

23

24

25

26

27

28

2