# EXHIBIT A

1   Kristen G. Simplicio (*pro hac vice*)
    Hassan A. Zavareei (*pro hac vice*)
2   Elvia Lopez (*pro hac vice*)
    Lauren Kuhlik (*pro hac vice*)
3   **TYCKO & ZAVAREEI LLP**
    1828 L Street, Northwest, Suite 1000
4   Washington, District of Columbia 20036
    Telephone: (202) 973-0900
5   Facsimile: (202) 973-0950
    hzavareei@tzlegal.com
6   ksimplicio@tzlegal.com
    elopez@tzlegal.com
7   lkuhlik@tzlegal.com

8   Annick Persinger (*pro hac vice*)
    **TYCKO & ZAVAREEI LLP**
9   1970 Broadway, Suite 1070
    Oakland, CA 94612
10  Telephone: (510) 254-6808
    Facsimile: (202) 973-0950
11  apersinger@tzlegal.com

12  *Counsel for Plaintiff Katie Ogdon and the Proposed Class*

13              **IN THE UNITED STATES DISTRICT COURT**

14                     **DISTRICT OF ARIZONA**

15  KATIE OGDON, *individually, and on behalf*        Case No. 2:22-cv-00477-DLR
16  *of a class of similarly situated persons*,
                                                      **PLAINTIFF'S FIRST SET OF**
17                     Plaintiffs,                    **REQUESTS FOR PRODUCTION OF**
                                                      **DOCUMENTS**
18         v.

19  GRAND CANYON EDUCATION, INC.,
    GRAND CANYON UNIVERSITY, INC.,
20  BRIAN MUELLER, DAN BACHUS, and
    STAN MEYER,
21
                       Defendants.
22

23  PROPOUNDING PARTY:              Plaintiff Katie Ogdon

24  RESPONDING PARTY:               Defendants GRAND CANYON
                                    EDUCATION, INC., and GRAND
25                                  CANYON UNIVERSITY, INC.

26  SET NUMBER:                     One

27

28

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Civil Local Rule 34-1 of the Civil Local Rules of the United States District Court for the Northern District of California, Plaintiffs Katie Ogdon hereby request that Defendants Grand Canyon Education and Grand Canyon University respond in writing to each of the requests set forth herein and produce the requested Documents for inspection at the offices of Tycko & Zavareei LLP, 1828 L Street, Northwest, Suite 1000, Washington, District of Columbia 20036, within 30 days after service of these Requests.

As soon as practicable, the parties shall meet and confer in good faith regarding an appropriate protocol for the production of documents. In lieu of such an agreement, the production of electronically stored information shall be in PDF format, and hardcopy documents shall be scanned and produced as PDF images. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). All documents must be searchable through Optical Character Recognition ("OCR"). When subjecting documents to an OCR process, the settings of the OCR software shall maximize text quality over processing speed. Any settings such as "autoskewing," "auto-rotation," and the like should be turned on when documents are run through the OCR process. Notwithstanding the above, Microsoft Excel files or other spreadsheet programs, database files, videos, and any other file types that reasonably require viewing in their native format for full understanding of their content shall be produced in their native format. The production of electronically stored documents shall also include all attendant metadata. Where such attendant metadata is not available, any available bibliographic coding shall be produced in its stead.

All documents must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

## **DEFINITIONS**

The following definitions apply to each of the Requests for Production of Documents set forth herein, and Plaintiffs incorporate them by reference into each of the Requests:

1.      "COMPLAINT" means First Amended Complaint in the above-captioned action, ECF No. 18.

2.      "CONCERNING" means without limitation, the following concepts: referring to, regarding, relating, discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, evidencing, estimating, containing, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

3.      "DOCUMENT" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Rule 34(a)(1)(A). *See* FED. R. CIV. P. 34(a)(1)(A); *see also* FED. R. CIV. P. 34(a) advisory committee's notes to 2006 amendment ("Rule 34(a)(1) is expansive and includes any type of information that is stored electronically. A common example often sought in discovery is electronic communications, such as e-mail. The rule covers -- either as documents or as electronically stored information -- information 'stored in any medium,' to encompass future developments in computer technology. Rule 34(a)(1) is intended to be broad enough to cover all current types of computer-based information, and flexible enough to encompass future changes and developments."). A draft or non-identical copy of a Document is a separate Document within the meaning of this term. Documents include electronically stored information, including video, on any a social media platform (including but not limited to Facebook, Instagram, Twitter, YouTube, etc.). Documents also include all electronically stored information on any of your Internet or intranet websites or servers.

4.      "COMMUNICATION" means without limitation, oral or written communications of any kind, such as electronic communications, emails, facsimiles, telephone communications, correspondence, exchange of written or recorded information, or face-to-face meetings transmitting information (in the form of facts, ideas, inquiries, or otherwise).

5.      "DEFENDANTS" refers collectively to Grand Canyon Education, Grand

Canyon University, Brian Mueller, Dan Bachus, and Stan Meyer. Where appropriate, the named Defendants Grand Canyon Education, Inc. and Grand Canyon University First are collectively referred to hereafter as the "CORPORATE DEFENDANTS," and Defendants Brian Mueller, Dan Bachus, and Stan Meyer are collectively referred to herein as the "INDIVIDUAL DEFENDANTS."

6.     The terms "YOU," and "YOUR" shall refer to YOU, the DEFENDANT responding to these requests, and includes any relevant predecessors, successors, subsidiaries, departments, divisions, committees, and/or affiliates, and including, without limitation, any organization or entity which it manages or controls, together with all present and former directors, officers, employees, agents, representatives, attorneys, or any persons acting, or purporting to act, on its behalf, including any call center or consulting firms retained, employed, or hired by YOU.

7.     The term UNIVERSITY shall refer to the collection of non-Defendant academic personnel such as instructors, as well as assets, such as the physical campus, intellectual property, and course materials. As described in Paragraphs 35, 59-60 of the Complaint, because multiple entities have done business as "Grand Canyon University," the term UNIVERSITY should be understood as encompassing the portfolio of services offered for educational consumer purchase, and not formal business entity without regard to ownership at any given point in time.

8.     "PROFESSIONAL ACCREDIDATION" means that the degree or certificate program meets the educational requirements for licensure in a given profession. As detailed in the Complaint, "[t]he standards for professional accreditation vary based on the nature of the program and the state laws at issue. Typically, however, states that require a person to obtain a graduate degree from a professionally accredited school before practicing in a Regulated Profession will require that degree program to include coursework in certain topics, meet various academic standards, and sometimes, include a practical component, such as an internship or other supervised professional experience in the field." *See* FAC ¶ 79.  The term PROFESSIONAL ACCREDIDATION is distinct from the term "regional accreditation."

9.     "ONLINE GRAD STUDENTS" refers to all students who enrolled in at least one course in connection with an online program for a graduate degree or professional certification on or after May 20, 2016.

10.    "PLAINTIFF" means Katie Ogdon.

11.    "ENROLLMENT PERSONNEL" refers to persons that are supervisors, employees, and staff that work for or with the Corporate Defendants, including but not limited to those serving as recruiters, enrollment counselor managers, enrollment counselors, counselors, or advisors.

## **INSTRUCTIONS**

The following instructions apply to each of the Requests for Production of Documents set forth below, and Plaintiffs incorporate them by reference into each of the Requests:

1.     These instructions incorporate Judge Rayes's Scheduling Order.

2.     These requests are directed to Defendants GRAND CANYON EDUCATION, INC., and GRAND CANYON UNIVERSITY, INC.

3.     If a person other than Defendants are known or believed to have in its possession, custody, or control documents or information responsive to any request, please state the name of the entity, the kind or nature of the documents or information known or believed to be maintained, any process you have initiated to retrieve these documents and the date it will be available to Plaintiff, or information sufficient to make it available to Plaintiff through Plaintiff's efforts.

4.     In responding to these requests, furnish all information and documents, including information contained in or on any document, that is known or available to you from all files or other sources that contain responsive documents, wherever located, and whether active, in storage, or otherwise, including all documents in the possession of your attorneys and any accountants, other professional persons or experts, investigators, or other persons acting on your behalf, or under you or your attorneys' control, employment, or direction.

5.     The obligation to produce the documents specified below is of a continuing

nature; your responses to these document requests are to be supplemented to the full extent required by the Federal Rules of Civil Procedure, including Rule 26(e), and the Civil Local Rules of this jurisdiction, and if at any time you acquire possession, custody, or control of any additional documents specified below, such documents are to be furnished promptly to counsel for Plaintiff at the address provided above, unless another place is mutually agreed-upon by counsel.

6.   Where only a portion of a document relates or refers to the subject indicated, the entire document is to be produced nevertheless, along with all attachments, appendices, and exhibits.

7.   All documents shall be produced as they are kept in the usual course of business with any identifying labels, file markings, or similar identifying features.

8.   All documents produced in response to these requests shall be organized and labeled to correspond with the request to which they respond, and each response to these requests shall identify the documents being produced in response to each request by Bates stamp number or otherwise.

9.   If there are no documents responsive to any request specified below, you shall so state in writing, produced at the time and place that documents are demanded to be produced by this request.

10.   Pursuant to Judge Rayes's Scheduling Order, "[o]bjections to Rule 34 document production requests shall be stated with specificity; general or boilerplate objections are not permitted."

11.   Pursuant to Judge Rayes's Scheduling Order, "[a]n objection to a Rule 34 request must state whether any responsive materials have been withheld on the basis of that objection."

12.   If any document or portion thereof is withheld under a claim of privilege, the withholding party shall produce so much of the document as is not subject to the possible claim of privilege, and shall furnish a statement, or "privilege log," signed by the party's counsel, which identifies each document or portion thereof for which a privilege is claimed,

including the following information:

    a.  The date of the document;

    b.  The name and title of the person who wrote, authored, prepared, signed, or originated the document, or the person who knows about the information contained therein;

    c.  The name and title of the recipient or recipients of the document;

    d.  All persons to whom copies of the documents were furnished, along with such persons' job titles or positions;

    e.  A brief description of the subject matter or nature of the document sufficient to assess whether the assertion of privilege is valid;

    f.  The specific basis upon which the privilege is claimed; and

    g.  With respect to any claim of privilege relating to an attorney, or action, advice or work product of an attorney, the identity of the attorney involved.

13.    If any portion of any document responsive to these requests is withheld under claim of privilege, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

14.    You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by claims of privilege), regardless of whether you consider the entire document to be relevant or responsive to the requests.

15.    Whenever a document is not produced in its entirety, including all attachments, or is produced in redacted form, so indicate on the document, state with particularity the reason or reasons it is not being produced in its entirety, and describe to the best of your knowledge, information, and belief and with as much particularity as possible, those portions of the document that are not being produced.

16.    If you withhold any information or documents requested herein on the grounds that it is protected by a confidentiality order, protective order, court order or other agreement, identify the relevant request for production, the specific grounds on which your objection is based, the nature of the information, the identity of the document withheld including the Bates

number if any, identify the lawsuit or other proceeding or transaction to which the order or agreement relates, the parties to the confidentiality or protective order and provide a copy of the order or agreement.

17.     Pursuant to Federal Rule of Civil Procedure 26(b)(2), you must identify and describe, specifically and in detail, any and all electronically stored information you have designated as "not reasonably accessible because of undue burden or cost." This rule requires that you "identify, by category or type, the sources containing potentially responsive information that you are neither searching nor producing. The identification should . . . provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources." See Fed. R. Civ. P. 26(b)(2) advisory committee comment.

18.      If any document requested herein has been lost, discarded, or destroyed, the document so lost, discarded, or destroyed shall be identified in a writing (produced at the time and place that documents are demanded to be produced by this request) as completely as possible, together with the following information: date of disposal, manner of disposal, reason for disposal, person authorizing the disposal, and person disposing of the documents.

19.     You are to respond to these Requests separately and fully in writing within 30 days of the date of service. FED. R. CIV. P. 34(b)(2)(A).

20.     Pursuant to Judge Rayes's Scheduling Order, "[d]ocument production in response to a Rule 34 request must be completed no later than the time specified in the request or another reasonable time specified in the response."

21.     You have a continuing duty to supplement or correct all responses. FED. R. CIV. P. 26(e).

22.     The omission of any Documents or things from your responses shall be deemed a representation that such Documents and things are not known to you, your agents, counsel, or other representatives at the time of the service of the responses or thereafter. Pursuant to Federal Rule of Civil Procedure 37, Plaintiffs may, before or at the time of hearing, move the Court for an order excluding from evidence all tangible or intangible Documents or things

1    that were known to Defendant at the time of its responses to these Requests but not disclosed

2    in its responses thereto.

3         23.   The following rules of construction apply to all Requests:

4              a.  The terms used are to be given their most expansive and inclusive
                   interpretation unless otherwise specifically limited in the Request itself.

5

6              b.  The terms "all," "any," and "each" shall be construed as encompassing any
                   and all.

7              c.  The connectives "and" and "or" shall be construed either disjunctively or
                   conjunctively as necessary to bring within the scope of the Request all
8                  responses that might otherwise be construed to be outside of its scope.

9              d.  The use of the singular form of any word includes the plural and vice versa.

10             e.  Verb tenses shall be interpreted to include past, present, and future tenses.

11             f.  References to a gender shall be interpreted to include the masculine,
                   feminine, and neuter.
12
13             g.  The word "including" should be read as "including but not limited to" and
                   the word "includes" should be read as "includes but is not limited to."

14                          **RELEVANT TIME PERIOD**

15        Unless otherwise indicated, each request seeks information relating to policies,

16   practices, and procedures in place during the CLASS PERIOD, and the relevant time period

17   shall include all Documents relating to such period even though prepared, published, sent, or

18   received, in whole or in part, prior to that period.

19               **REQUESTS FOR PRODUCTION OF DOCUMENTS**

20   **REQUEST FOR PRODUCTION NO. 1:**

21        All DOCUMENTS and non-privileged COMMUNICATIONS CONCERNING

22   PLAINTIFF without limitation as to time period.

23   **REQUEST FOR PRODUCTION NO. 2:**

24        DOCUMENTS sufficient to identify exemplars of each contract, agreement, form,

25   and/or application used in connection with admissions, enrollment, graduation, program

26   continuation, and/or financial aid for ONLINE GRAD STUDENTS.

27   **REQUEST FOR PRODUCTION NO. 3:**

28        For each case YOU identified in response to Interrogatory No. 2, produce all non-

public information pertaining to that lawsuit, including but not limited to written responses to discovery; transcripts for all hearings, depositions, and other proceedings; and documents filed under seal. If YOU object to the production on the basis of a confidentiality agreement, produce the applicable confidentiality agreement.

**REQUEST FOR PRODUCTION NO. 4:**

For each investigation YOU identified in response to Interrogatory No. 3, produce the testimony, comments, and/or documents supplied.

**REQUEST FOR PRODUCTION NO. 5:**

DOCUMENTS sufficient to identify YOUR external and internal staff structure, such as organizational charts and/or directories, including the names, titles, and positions of all persons, departments, entities, divisions, subdivisions, affiliates, subsidiaries, agents, and other persons and entities that institute or implement policies relating to the University's online graduate degree or certification programs at all relevant times.

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS sufficient to identify the employment arrangements between CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS, including documents sufficient to identify their employment contracts, job duties at all relevant times, compensation packages, and other terms of employment.

**REQUEST FOR PRODUCTION NO. 7:**

All DOCUMENTS and COMMUNICATIONS exchanged with the Department of Education that relate to the change in ownership and conversion to nonprofit status.

**REQUEST FOR PRODUCTION NO. 8:**

All DOCUMENTS and COMMUNICATIONS exchanged with the Department of Education that relate to any borrower defense submissions from ONLINE GRAD STUDENTS.

**REQUEST FOR PRODUCTION NO. 9:**

All DOCUMENTS and COMMUNICATIONS exchanged with the Higher Learning Commission that relate to the change in ownership and conversion to nonprofit status.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to identify Annual Reports for each year since January 1, 2014.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS sufficient to identify transcripts, minutes, and handouts from Board of Director meetings for each year since January 1, 2014.

**REQUEST FOR PRODUCTION NO. 12:**

DOCUMENTS sufficient to identify transcripts, minutes, and handouts from Shareholder meetings for each year since January 1, 2014.

**REQUEST FOR PRODUCTION NO. 13:**

DOCUMENTS sufficient to identify the course catalogues for the online graduate degree or certificate programs offered.

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS sufficient to identify the curriculum and graduation requirements for each online graduate degree or certificate program offered.

**REQUEST FOR PRODUCTION NO. 15:**

For each online graduate degree or certificate program offered, DOCUMENTS sufficient to identity each state in which that degree or program meets the standards for PROFESSIONAL ACCREDIATION and associated profession or occupation for each.

**REQUEST FOR PRODUCTION NO. 16:**

DOCUMENTS sufficient to identify all tuition and fee schedules for each online graduate degree or certificate program offered.

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to identify all instructors of ONLINE GRAD STUDENTS, including course(s) taught, dates of instruction, and whether the instructor had tenure.

**REQUEST FOR PRODUCTION NO. 18:**

DOCUMENTS sufficient to identify YOUR procedures, policies, or instructions for procuring federal student loan money on behalf of ONLINE GRAD STUDENTS.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS sufficient to identify YOUR procedures, policies, or instructions established and implemented to comply with the rules described in 34 C.F.R. § 668.72 (Nature of educational program).

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to identify YOUR procedures, policies, or instructions established and implemented to comply with the rules described in 34 C.F.R. Subpart Q (Gainful employment programs).

**REQUEST FOR PRODUCTION NO. 21:**

All DOCUMENTS sufficient to identify all MARKETING materials concerning the University's online graduate degree or certification programs including archived copies of webpages, commercials, promotional videos, and other advertisements.

**REQUEST FOR PRODUCTION NO. 22:**

All DOCUMENTS sufficient to identify YOUR policies and procedures for representing or omitting information about PROFESSIONAL ACCREDIATION in MARKETING the University's online graduate degree or certification programs.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS sufficient to identify, for each purchase of advertisements for the UNIVERSITY made to prospective ONLINE GRAD STUDENTS on ANY internet platform (including social media outlets such as Facebook and Instagram, and online search engines, such as Google bid records) that were displayed at any point during the CLASS PERIOD, (a) the dates the advertisements ran, (b) the text and images associated with the advertisements, (c) the demographics and other parameters (such as key words, geographic regions, interests, etc) of the targeted recipients of the advertisements, and if applicable, the (d) search terms purchased.

**REQUEST FOR PRODUCTION NO. 24:**

All DOCUMENTS CONCERNING any training given to ENROLLMENT PERSONNEL regarding the policies, procedures, or guidelines for recruiting and retaining

ONLINE GRAD STUDENTS for the University's online graduate degree or certification programs, including DOCUMENTS sufficient to identify all such training manuals.

**REQUEST FOR PRODUCTION NO. 25:**

All DOCUMENTS CONCERNING any procedure, policy, instruction, or guidance provided or made available to ENROLLMENT PERSONNEL regarding recruiting, enrolling, retaining, and advising ONLINE GRAD STUDENTS, including but not limited to how to answer common questions from prospective, current or former students, including DOCUMENTS sufficient to identify any such policies and procedures.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS sufficient to identify terms of employment for ENROLLMENT PERSONNEL, including terms of compensation, quota requirements, and incentives.

**REQUEST FOR PRODUCTION NO. 27:**

All DOCUMENTS CONCERNING any techniques for recruitment, retention, and advising of ONLINE GRAD STUDENTS that YOU recommended to, approved to, endorsed for use by, or otherwise encouraged use by ENROLLMENT PERSONNEL.

**REQUEST FOR PRODUCTION NO. 28:**

All DOCUMENTS CONCERNING any statements that YOU warned, prohibited, issued precautions or caveats on the use of by, or otherwise discouraged the use of by ENROLLMENT PERSONNEL when speaking to prospective, current, or former ONLINE GRAD STUDENTS.

**REQUEST FOR PRODUCTION NO. 29:**

All DOCUMENTS concerning any call or email scripts provided to any personnel when speaking to prospective, current, or former ONLINE GRAD STUDENTS, including DOCUMENTS sufficient to identify each call or email script provided to personnel and each employee that received the information, including the date of receipt.

**REQUEST FOR PRODUCTION NO. 30:**

All DOCUMENTS CONCERNING the consequences to be imposed on ENROLLMENT PERSONNEL as a result of a violation of a policy, procedure, instruction,

1   or expectation relating to RECRUITMENT and RETENTION policies, including

2   DOCUMENTS sufficient to identify the consequences to be imposed on ENROLLMENT

3   PERSONNEL as a result of a violation of a policy, procedure, instruction, or expectation

4   relating to RECRUITMENT and RETENTION policies.

5   **REQUEST FOR PRODUCTION NO. 31:**

6   　　　　DOCUMENTS sufficient to identify any ENROLLMENT PERSONNEL on whom

7   consequences for violating the policy, procedure, instruction, or expectation relating to

8   RECRUITMENT and RETENTION policies were imposed, including the nature of the

9   consequences and the date of the incident.

10  **REQUEST FOR PRODUCTION NO. 32:**

11  　　　　All DOCUMENTS CONCERNING ONLINE GRAD STUDENTS' complaints,

12  questions, or confusion regarding accreditation of online graduate or certification programs

13  and (not or) suitability of programs for employment, including DOCUMENTS sufficient to

14  IDENTIFY each PERSON that raised complaints, questions, or confusion regarding the

15  accreditation of his or her online graduate degree or certification program.

16  **REQUEST FOR PRODUCTION NO. 33:**

17  　　　　DOCUMENTS sufficient to show YOUR preservation, retention, backup, storage,

18  destruction, and litigation hold policies and practices for DOCUMENTS, electronic

19  communications equipment, and data storage media (including phones, mobile devices,

20  laptops, tablets, pagers, personal computers, servers, removable storage media, cloud storage,

21  and backup media) as well as any changes to, enforcement of, and compliance with, those

22  policies over the Relevant Time Period, including DOCUMENTS sufficient to identify YOUR

23  internal telephone systems and services and any databases or storage systems in which records

24  of telephone communications (e.g., call detail records and similar logs of telephone calls made

25  or received and voicemails received) are stored.

26  **REQUEST FOR PRODUCTION NO. 34:**

27  　　　　All DOCUMENTS identified or otherwise referenced in YOUR responses to ANY

28  interrogatories served by PLAINTIFF on YOU in THIS ACTION.

**REQUEST FOR PRODUCTION NO. 35:**

All DOCUMENTS consulted and/or reviewed by YOU to assist in the preparation of YOUR responses to ANY interrogatories served by PLAINTIFFS on YOU in THIS ACTION.

**REQUEST FOR PRODUCTION NO. 36:**

DOCUMENTS sufficient to identify any insurance policies or indemnification agreements that may provide coverage for ANY DEFENDANT for ANY claims or causes of action asserted in this litigation or that may provide reimbursement for costs, fees or payments incurred or made in defense of this litigation.

Dated: June 2, 2022

Respectfully Submitted,

**TYCKO & ZAVAREEI, LLP**

/s/ *Kristen G. Simplicio*
Kristen G. Simplicio (*pro hac vice*)
Hassan A. Zavareei (*pro hac vice*)
Elvia Lopez (*pro hac vice*)
Lauren Kuhlik (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1828 L Street, Northwest, Suite 1000
Washington, District of Columbia 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ksimplicio@tzlegal.com
elopez@tzlegal.com
lkuhlik@tzlegal.com

Annick Persinger (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

*Counsel for Plaintiff Katie Ogdon*
*and the Proposed Class*

1

## PROOF OF SERVICE

2      At the time of service, I was over 18 years of age and not a party to this action. I am

3   employed in the District of Columbia. My business address is Tycko and Zavareei LLP, 1828

4   L Street NW, Suite 1000, Washington, DC 20036. On June 2nd, 2022 I served a true copy of

5   the foregoing document on the following interested parties:

6

7   Amy L Pierce
   **LEWIS BRISBOIS BISGAARD & SMITH LLP**

8   2020 W El Camino Ave., Suite 95833
   Sacramento, CA 95833

9   Telephone: (916) 646-8210
   Facsimile: (916) 564-5444

10  amy.pierce@lewisbrisbois.com

11

   Kathryn Ann Honecker

12  **LEWIS BRISBOIS BISGAARD**
   **& SMITH LLP**

13  2929 N Central Ave., Suite 1700

14  Phoenix, AZ 85012
   Telephone: (602) 385-1040

15  kathryn.honecker@lewisbrisbois.com

16  Derin Bronson Dickerson
   Andrew Liebler

17  **ALSTON & BIRD LLP**
   1 Atlantic Center

18  1201 W Peachtree St. NW, Suite 4200
   Atlanta, GA 30309-3424

19  Telephone: (404) 881-4712
   derin.dickerson@alston.com

20  andrew.liebler@alston.com

21  Elizabeth Anne Sperling
   **ALSTON & BIRD LLP**

22  333 S Hope St., 16th Fl.
   Los Angeles, CA 90071

23  Telephone: (213) 576-1000
   elizabeth.sperling@alston.com

24
   *Counsel for Defendants Grand Canyon University Incorporated et al.*

25

26

27

28

---

[X] VIA EMAIL: I caused the foregoing documents to be electronically served by electronically mailing a true and correct copy through the electronic mail system to the emails as set forth above.

Dated: June 2nd, 2022                                    /s/ Aaron McReynolds

                                                        Aaron McReynolds

# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Katie Ogdon,                    )
                                )   No.  CV-22-00477-PHX-DLR
          Plaintiff,            )
                                )
          vs.                   )   Phoenix, Arizona
                                )   June 16, 2022
Grand Canyon University,        )   10:48 a.m.
Inc., et al.,                   )
                                )
          Defendant.            )
_____ )


BEFORE:  THE HONORABLE DOUGLAS L. RAYES, JUDGE


REPORTER'S TRANSCRIPT OF PROCEEDINGS


SCHEDULED TELEPHONIC RULE 16 SCHEDULING CONFERENCE


Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1    announcement.

2            THE COURT:  Okay.

3            MS. HONECKER:  Kathryn Honecker on behalf of Grand

4    Canyon University, and Amy Pierce for Grand Canyon University

5    from Lewis Brisbois.

6            THE COURT:  Okay.

7            MS. PIERCE:  Good morning, Your Honor.

8            MR. LIEBLER:  And finally, good morning, Your Honor.

9    Andrew Liebler with Alston & Bird, also here on behalf of Grand

10   Canyon Education and the individual defendants.  Thank you.

11           THE COURT:  Okay.  Remember to speak slowly and

12   identify yourself for the record anytime you speak.

13           All right.  I have reviewed the 26(f) report.  This is

14   a complex putative class action that will require substantial

15   fact and expert discovery both before and after class

16   certification briefing.

17           There is a pending motion to dismiss.  Federal rules

18   are meant to secure the just, speedy, and inexpensive

19   determination of every case, and I know in every case there's

20   always tension between speediness and inexpensiveness.

21           Having reviewed your statements and the pending motion

22   to dismiss, I think it makes more sense to resolve the motion

23   to dismiss before sending the parties out on the road to

24   discovery.  That just -- in this case, it just seems to make

25   more sense.

1        But we'll get this motion to dismiss resolved, and

2   after that, then we'll reset the scheduling conference and get

3   the case rolling.

4        MS. SIMPLICIO:  Excuse me, Your Honor.  This is

5   Kristen Simplicio on behalf of the plaintiffs.  Thank you for

6   that.

7        One question I have:  Does this mean that the

8   discovery that's already been exchanged is essentially tabled

9   for now, or should the parties begin exchanging some

10  preliminary documents?

11       THE COURT:  Yeah, I don't want you to stop what you're

12  doing now, but I don't want to get this schedule set out where

13  we do extensive discovery.  I want to get this resolved first,

14  and then we'll go on that.

15       But I don't want you to -- if you've already started

16  some discovery, go ahead and finish that up.

17       MS. SIMPLICIO:  Thank you, Your Honor.

18       MR. DICKERSON:  Your Honor, this is Derin Dickerson on

19  behalf of GCU.  Just wanted to get clarification on that.

20       The parties have exchanged document requests, and they

21  are somewhat extensive, although I don't think exhaustive.  I

22  think plaintiffs intend on serving additional discovery.  Just

23  wanted to clarify, even for kind of the expansive discovery

24  that's already been served, you want us to respond to that

25  before the hearing date?

        THE COURT:  Well, I haven't seen what's been served.

What are we talking about?

        MR. DICKERSON:  I think there are somewhere in the

neighborhood of 30 to 40 document requests that request a great

deal of information, as well as some interrogatories that

admittedly are a little more limited.

        THE COURT:  All right.  Well --

        MS. SIMPLICIO:  Excuse me, Your Honor.  This is

Kristen Simplicio again for plaintiffs.

        Just to clarify, we did issue some RFPs.  There are

five defendants, so that is what I think my colleague here is

counting up the total, although some of them are the same.

        Most of the documents that we have sought are policy

and procedure documents, communication -- like, attorney

communications with the Department of Education.  Very simple

requests that do not require, like, extensive ESI searches.

        We have already agreed with the defendants to hold off

on any kind of ESI for now, so what we're basically just

looking for is some policy and procedure documents that we

think will help discovery move a little faster once it gets

going.

        THE COURT:  Yeah.  I -- based on that, it sounds like

this won't -- what I'm trying to avoid is a lot of time and

expense in the discovery till I get this resolved.  And what

I'm hearing, it sounds like this is basic information that's

1    not going to require a lot of time and expense to produce.

2            So let's go ahead and get started on that.  We'll get

3    the motion to dismiss ruled on quickly, and then we'll decide

4    where we go from there.  All right?

5            Anything else to take up?

6            MS. SIMPLICIO:  No.  Thank you, Your Honor.

7            THE COURT:  Okay.  Then we'll stand in recess.  See

8    you in July.

9            (Proceedings concluded at 10:56 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, JENNIFER A. PANCRATZ, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion of

9   the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12          DATED at Phoenix, Arizona, this 5th day of August,

13  2022.

14

15

16

                    s/Jennifer A. Pancratz
17                  Jennifer A. Pancratz, RMR, CRR, FCRR, CRC

18

19

20

21

22

23

24

25

# EXHIBIT C

| GCU/ GCE No. | Individ ual No. | Request | Notes | Additional Details as to What Is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 1 | 1 | All DOCUMENTS and non-privileged COMMUNICATIONS CONCERNING PLAINTIFF without limitation as to time period. | Agreed to produce in written responses & in communications from May 2022, many categories of responsive documents identified in the initial disclosures | a. inquiries or forms submitted by Ogdon to obtain info about the school b. any internal instructions, communications, or internal follow up as to how to handle, programs to recommend, etc c. emails, messages, and other communications exchanged between Ogdon and recruiters before enrollment d. Ogdon's application for enrollment at GCU e. internal communications on the decision to admit f. Documents reflecting all fees and costs charged, paid, waived, refunded, etc, including both for tuition, and for any incidental fees and charges (e.g., graduation costs, health insurance costs, course material costs, etc) g. All paperwork relating to Ogdon's payment of fees and costs, including scholarships, grants, fee waivers, financial aid records, etc for each course/semester enrolled, h. Documents showing course selections and evidence of enrollment/completion, including any | GCU000002-16: Katie Ogdon application, enrollment agreement | All other documents regarding Katie Ogdon. If there are some documents that cannot be provided without a significant search, please provide those documents that can be produced, and provide us information regarding why the other documents are not readily available. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 2 | | DOCUMENTS sufficient to identify exemplars of each contract, agreement, form, and/or application used in connection with admissions, enrollment, graduation, program continuation, and/or financial aid for ONLINE GRAD STUDENTS. | We will agree to defer until a later date | From period of May 2016 to present, exemplars of each version of the following applications, forms, contracts, or agreements used in connection with online graduate students: a. those completed by prospective students seeking information about online graduate degree programs at GCU b. those used to apply for admission, communicate acceptance, and finalize enrollment. c. those used for payment of tuition and fees, e.g. financial aid, scholarships, grants, fee waivers, etc d. those used to enroll/drop courses and continue education through completion of program d. those used in connection with graduation and completion of program | GCU000002-16: Katie Ogdon application, enrollment agreement | Example of remaining forms requested, and the versions of all forms from May 2016-present |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 3 | 2 | For each case YOU identified in response to Interrogatory No. 2, produce all non-public information pertaining to that lawsuit, including but not limited to written responses to discovery; transcripts for all hearings, depositions, and other proceedings; and documents filed under seal. If YOU object to the production on the basis of a confidentiality agreement, produce the applicable confidentiality agreement. | Will agree to defer until later date | | None | |
| 4 | 3 | For each investigation YOU identified in response to Interrogatory No. 3, produce the testimony, comments, and/or documents supplied. | Will agree to defer until later date | | None | |

| GCU/ GCE No. | Individ ual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 5 | | DOCUMENTS sufficient to identify YOUR external and internal staff structure, such as organizational charts and/or directories, including the names, titles, and positions of all persons, departments, entities, divisions, subdivisions, affiliates, subsidiaries, agents, and other persons and entities that institute or implement policies relating to the University's online graduate degree or certification programs at all relevant times. | | Organization charts and/or staff directories for GCE and GCU from 2016 to the present | GCU000001: Organizational chart for GCU | Metadata suggests doc is from 2016 and thus might be for entity now known as GCE. Need confirmation, and remaining organizational charts for both Defendants from 2016 to present, dated |
| 6 | 4 | DOCUMENTS sufficient to identify the employment arrangements between CORPORATE DEFENDANTS and INDIVIDUAL DEFENDANTS, including documents sufficient to identify their employment contracts, job duties at all relevant times, compensation packages, and other terms of employment | Will agree to defer until later date | For each of the three individual defendants from 2016 to present: a. employment contracts (with GCU and GCE) b. job descriptions or other evidence of scope of responsibilities and work at both GCU and GCE c. compensation packages d. other evidence of terms of employment | None | All documents listed in E8 |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| | 5 | All DOCUMENTS identified or otherwise referenced in YOUR responses to ANY interrogatories served by PLAINTIFF on YOU in THIS ACTION. | Will agree to defer until later date | | | |
| | 6 | All DOCUMENTS consulted and/or reviewed by YOU to assist in the preparation of YOUR responses to ANY interrogatories served by PLAINTIFFS on YOU in THIS ACTION. | [Withdrawn - Request appeared twice in individual RFPs and not in corporate RFPs] | | | |
| 7 | | All DOCUMENTS and COMMUNICATIONS exchanged with the Department of Education that relate to the change in ownership and conversion to nonprofit status. | Plaintiff informed Court at status conference that DOE communications were sought; Court did not indicate any issue. Defendants dispute relevance but admit in correspondence on August 31 that this issue is "substantially related," to the claims<br><br>Relevant because it establishing liability as to both (as opposed to just one) of the entities, and part of furtherance of RICO scheme. | formal letters and electronic communications | None | All documents listed in E11. If there are documents that are not readily available without significant ESI searching, please produce the documents that are readily available and provide information regarding why the remaining documents are not. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What Is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| | 7 | DOCUMENTS sufficient to identify any insurance policies or indemnification agreements that may provide coverage for ANY DEFENDANT for ANY claims or causes of action asserted in this litigation or that may provide reimbursement for costs, fees or payments incurred or made in defense of this litigation. | Will agree to defer until later date | | None | |
| 8 | | All DOCUMENTS and COMMUNICATIONS exchanged with the Department of Education that relate to any borrower defense submissions from ONLINE GRAD STUDENTS. | Will agree to defer until later date | formal letters and electronic communications | None | All documents listed in E13. If there are documents that are not readily available without significant ESI searching, please produce the documents that are readily available and provide information regarding why the remaining documents are not. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 9 | | All DOCUMENTS and COMMUNICATIONS exchanged with the Higher Learning Commission that relate to the change in ownership and conversion to nonprofit status. | Will agree to defer until a later date | formal letters and electronic communications | None | All documents listed in E14. If there are documents that are not readily available without significant ESI searching, please produce the documents that are readily available and provide information regarding why the remaining documents are not. |
| 10 | | DOCUMENTS sufficient to identify Annual Reports for each year since January 1, 2014. | Agreed to produce in written responses | Nine years (2014-2022) | 2015 GCE Annual report 2016, 2017 GCU Annual Reports | Annual reports for either or both entities from 2014 to 2022, excluding the three that were produced |
| 11 | | DOCUMENTS sufficient to identify transcripts, minutes, and handouts from Board of Director meetings for each year since January 1, 2014. | Will agree to defer until later date | Nine years (2014-2022) | None | Please produce all Board of Director meeting minutes, transcripts, and handouts from 2014-2022. If some of these documents are not available without an extensive ESI search, please produce the documents that are readily available and provide information why the remaining documents are not. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 12 | | DOCUMENTS sufficient to identify transcripts, minutes, and handouts from Shareholder meetings for each year since January 1, 2014. | Will agree to defer until later date | Nine years (2014-2022) | None | Please produce all Shareholder meeting minutes, transcripts, and handouts from 2014-2022. If some of these documents are not available without an extensive ESI search, please produce the documents that are readily available and provide information why the remaining documents are not. |
| 13 | | DOCUMENTS sufficient to identify the course catalogues for the online graduate degree or certificate programs offered. | GCU admitted that catalogs from 2019-2021 relevant to this action in initial disclosures, but both Defendants refused to produce any catalogs but those for year Ogdon enrolled on relevance grounds. Catalogs for entire class period relevant to Rule 23 issues and merits | Seven years (2016-2022) | GCU Course Catalogs for 2017-2019 | Course catalogs for 2016 and 2020-2022. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 14 | | DOCUMENTS sufficient to identify the curriculum and graduation requirements for each online graduate degree or certificate program offered. | Plaintiff does not seek information as to the specific reading and assignment list, or workload associated with each course, but only the overall graduation requirements of each degree.<br><br>Relevant to Rule 23 issues and merits | Seven years (2016-2022) | GCU Academic Policy Handbooks for 2016-2019 | Academic policy handbooks for 2020-2022 |
| 15 | | For each online graduate degree or certificate program offered, DOCUMENTS sufficient to identity each state in which that degree or program meets the standards for PROFESSIONAL ACCREDITATION and associated profession or occupation for each. | Relevant to Rule 23 issues and merits Defendants claim information on their website, but not readily identifiable, and not clear if complete historical information available | Seven years (2016-2022) | GCU Academic Policy Handbooks for 2016-2019 | Remaining responsive documents |
| 16 | | DOCUMENTS sufficient to identify all tuition and fee schedules for each online graduate degree or certificate program offered. | Defendants agreed to produce for "relevant time period" - need to produce for all years as it is relevant to classwide damages<br><br>GCU acknowledged relevance of documents responsive to request in initial disclosures | Seven years (2016-2022) | None | Please produce all tuition and fee schedules for each online graduate degree or certificate program offered from 2016-2022. If these documents are not readily available, please provide information as to why. |

9

| GCU/ GCE No. | Individ ual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 17 | | DOCUMENTS sufficient to identify all instructors of ONLINE GRAD STUDENTS, including course(s) taught, dates of instruction, and whether the instructor had tenure. | Will agree to defer until later date | Seven years (2016-2022) | None | Please produce a list of all instructors of ONLINE GRAD STUDENTS, including course(s) taught, dates of instruction, and whether the instructor had tenure from 2016-2022. If these documents are not readily available, please provide information as to why. |
| 18 | | DOCUMENTS sufficient to identify YOUR procedures, policies, or instructions for procuring federal student loan money on behalf of ONLINE GRAD STUDENTS. | Relevant to Plaintiffs' wire fraud theories and classwide damages<br><br>GCU acknowledged relevance of documents pertaining to its policies and practices for fees and refunds and guidance on student loans and related regulations are responsive to request in initial disclosures | Seven years (2016-2022) | None | Please produce all procedures, policies, and instructions for procuring federal student loan money on behalf of online grad students. If these documents are not readily available, please provide information as to why. |

10

| GCU/ GCE No. | Individ ual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 19 | | DOCUMENTS sufficient to identify YOUR procedures, policies, or instructions established and implemented to comply with the rules described in 34 C.F.R. § 668.72 (Nature of educational program). | Narrowed to Defendants' procedures, policies, and instructions to their recruiting and marketing personnel on compliance with that section. Specifically, Plaintiff seeks documents pertaining to how Defendants' marketing and recruiting personnel are to advertise and communicate with students and prospective students on issues material information to a student's decision to enroll, including professional accreditation and licensure, as well as other such as requirements for the degree, cost of the degree, and employment prospects.<br><br>In Defendants' written responses, they agreed | Seven years (2016-2022) | GCU001190-92: GCE Standards of Performance for All Online and Ground Operations Staff (Oct. 7, 2021) GCU001193-94: GCE Zero Tolerance Policy (Sept. 18, 2018) | Please produce the remaining responsive documents, or indicate that no further responsive documents exist. |

| GCU/ GCE No. | Individ ual No. | Request | Notes | Additional Details as to What Is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 20 | | DOCUMENTS sufficient to identify YOUR procedures, policies, or instructions established and implemented to comply with the rules described in 34 C.F.R. Subpart Q (Gainful employment programs) | Will agree to defer until later date | Seven years (2016-2022) | GCU001190-92: GCE Standards of Performance for All Online and Ground Operations Staff (Oct. 7, 2021) GCU001193-94: GCE Zero Tolerance Policy (Sept. 18, 2018) | Please produce the remaining responsive documents, or indicate that no further responsive documents exist. |
| 21 | | All DOCUMENTS sufficient to identify all MARKETING materials concerning the University's online graduate degree or certification programs including archived copies of webpages, commercials, promotional videos, and other advertisements | Relevant to Rule 23 and merits issues Some responsive categories of documents (includikng website and webpages) identified in initial disclosures | From period of May 2016 to present, exemplars of each version of the following as used in connection with recruiting online graduate students: a. on public university website, the webpages for each program, course, and degree offered b. commericals, videos, posters, pamphlets, written promotional text, online advertising materials, that were disseminated to recruit online graduate students, either directly or through third parties | None | All documents listed in E26. If there are documents that are not readily available without significant ESI searching, please produce the documents that are readily available and provide information regarding why the remaining documents are not. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 22 | | All DOCUMENTS sufficient to identify YOUR policies and procedures for representing or omitting information about PROFESSIONAL ACCREDITATION in MARKETING the University's online graduate degree or certification programs. | Agreed to produce in written responses | Seven years (2016-2022) | GCU001190-92: GCE Standards of Performance for All Online and Ground Operations Staff (Oct. 7, 2021) GCU001193-94: GCE Zero Tolerance Policy (Sept. 18, 2018) | Please produce the remaining responsive documents, or indicate that no further responsive documents exist. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What Is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 23 | | DOCUMENTS sufficient to identify, for each purchase of advertisements for the UNIVERSITY made to prospective ONLINE GRAD STUDENTS on ANY internet platform (including social media outlets such as Facebook and Instagram, and online search engines, such as Google bid records) that were displayed at any point during the CLASS PERIOD, (a) the dates the advertisements ran, (b) the text and images associated with the advertisements, (c) the demographics and other parameters (such as key words, geographic regions, interests, etc.) of the targeted recipients of the advertisements, and if applicable, the (d) search terms purchased. | Complaint alleges Plaintiff saw these advertisements; relevant to classwide and merits issues | | None | Please produce all remaining responsive documents. If some documents are not stored in a method that makes their production readily available, please produce the documents that are available and provide information as to why the remaining documents are not. |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 24 | | All DOCUMENTS CONCERNING any training given to ENROLLMENT PERSONNEL regarding the policies, procedures, or guidelines for recruiting and retaining ONLINE GRAD STUDENTS for the University's online graduate degree or certification programs, including DOCUMENTS sufficient to identify all such training manuals. | Will only seek documents sufficient to identify the training materials, policies, procedures, etc, at this time. Will defer remainder of request to later date.<br><br>Defendants agreed to produce some responsive documents in written communications from May 2022, and admit certain responsive documents are relevant in initial disclosures | | GCU001190-92: GCE Standards of Performance for All Online and Ground Operations Staff (Oct. 7, 2021) GCU001193-94: GCE Zero Tolerance Policy (Sept. 18, 2018) | Please produce all policies and training manuals given to ENROLLMENT PERSONNEL regarding the policies, procedures, or guidelines for recruiting and retaining ONLINE GRAD STUDENTS for the University's online graduate degree or certification programs. If some documents are not stored in a method that makes their production readily available, please produce the documents that are available and provide information as to why the remaining documents are not. |

| GCU/ GCE No. | Individ ual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 25 | | All DOCUMENTS CONCERNING any procedure, policy, instruction, or guidance provided or made available to ENROLLMENT PERSONNEL regarding recruiting, enrolling, retaining, and advising ONLINE GRAD STUDENTS, including but not limited to how to answer common questions from prospective, current or former students, including DOCUMENTS sufficient to identify any such policies and procedures. | See Request No. 24 | | | |
| 26 | | DOCUMENTS sufficient to identify terms of employment for ENROLLMENT PERSONNEL, including terms of compensation, quota requirements, and incentives | Will agree to defer until later date | | | |
| 27 | | All DOCUMENTS CONCERNING any techniques for recruitment, retention, and advising of ONLINE GRAD STUDENTS that YOU recommended to, approved to, endorsed for use by, or otherwise encouraged use by ENROLLMENT PERSONNEL. | Will agree to defer until later date | | | |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 28 | | All DOCUMENTS CONCERNING any statements that YOU warned, prohibited, issued precautions or caveats on the use of by, or otherwise discouraged the use of by ENROLLMENT PERSONNEL when speaking to prospective, current, or former ONLINE GRAD STUDENTS. | Will agree to defer until later date | | | |
| 29 | | All DOCUMENTS concerning any call or email scripts provided to any personnel when speaking to prospective, current, or former ONLINE GRAD STUDENTS, including DOCUMENTS sufficient to identify each call or email script provided to personnel and each employee that received the information, including the date of receipt. | Will agree to defer until later date | | | |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What Is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 30 | | All DOCUMENTS CONCERNING the consequences to be imposed on ENROLLMENT PERSONNEL as a result of a violation of a policy, procedure, instruction, or expectation relating to RECRUITMENT and RETENTION policies, including DOCUMENTS sufficient to identify the consequences to be imposed on ENROLLMENT PERSONNEL as a result of a violation of a policy, procedure, instruction, or expectation relating to RECRUITMENT and RETENTION policies. | Will agree to defer until later date | | | |
| 31 | | DOCUMENTS sufficient to identify any ENROLLMENT PERSONNEL on whom consequences for violating the policy, procedure, instruction, or expectation relating to RECRUITMENT and RETENTION policies were imposed, including the nature of the consequences and the date of the incident. | Will agree to defer until later date | | | |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 32 | | All DOCUMENTS CONCERNING ONLINE GRAD STUDENTS' complaints, questions, or confusion regarding accreditation of online graduate or certification programs and (not or) suitability of programs for employment, including DOCUMENTS sufficient to IDENTIFY each PERSON that raised complaints, questions, or confusion regarding the accreditation of his or her online graduate degree or certification program. | Will agree to defer until later date | | | |

| GCU/ GCE No. | Individual No. | Request | Notes | Additional Details as to What is Called For | Responsive Documents Produced | Missing Documents Currently Requested |
|---|---|---|---|---|---|---|
| 33 | | DOCUMENTS sufficient to show YOUR preservation, retention, backup, storage, destruction, and litigation hold policies and practices for DOCUMENTS, electronic communications equipment, and data storage media (including phones, mobile devices, laptops, tablets, pagers, personal computers, servers, removable storage media, cloud storage, and backup media) as well as any changes to, enforcement of, and compliance with, those policies over the Relevant Time Period, including DOCUMENTS sufficient to identify YOUR internal telephone systems and services and any databases or storage systems in which records of telephone communications (e.g., call detail records and similar logs of telephone calls made or received and voicemails received) are stored. | Will agree to defer until later date | | None | Please provide all responsive policies, procedures, and guidelines. If you claim that this request is too burdensome, please provide information as to how these documents are stored, what is reasonably available, and why the remaining responsive documents are not. |

# Exhibit D

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Katie Ogdon, | ) | |
| | ) | No.  CV-22-00477-PHX-DLR |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | July 14, 2022 |
| Grand Canyon University, | ) | 2:28 p.m. |
| Inc., et al., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DOUGLAS L. RAYES, JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>TELEPHONIC ORAL ARGUMENT</u>**

Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

<u>**A P P E A R A N C E S**</u>

For the Plaintiff:

    TYCKO & ZAVAREEI LLP
    By:  Kristen G. Simplicio, Esq.
        Hassan A. Zavareei, Esq.
    1828 L Street NW, Suite 1000
    Washington, DC 20036

    HAGENS BERMAN SOBOL SHAPIRO LLP
    By:  Leonard W. Aragon, Esq.
    11 W. Jefferson St., Suite 1000
    Phoenix, AZ 85003

For the Defendants:

    ALSTON & BIRD LLP
    By:  Derin B. Dickerson, Esq.
    1 Atlantic Center
    1201 W. Peachtree St. NW, Suite 4200
    Atlanta, GA 30309

    ALSTON & BIRD LLP
    By:  Elizabeth A. Sperling, Esq.
    333 S. Hope St., 16th Floor
    Los Angeles, CA 90071

    LEWIS BRISBOIS BISGAARD & SMITH LLP
    By:  Amy L. Pierce, Esq.
    2020 W. El Camino Avenue, Suite 700
    Sacramento, CA 95833

1              **P R O C E E D I N G S**

2              (Proceedings commenced at 2:28 p.m.)

3              THE COURTROOM DEPUTY:  We are on the record in civil

4    docket 22-477, Katie Ogdon versus Grand Canyon University

5    Incorporated and others, before the Court for oral argument.

6              Counsel, please announce for the record.

7              MS. SIMPLICIO:  Good afternoon, Your Honor.  This is

8    Kristen Simplicio from Tycko & Zavareei on behalf of the

9    plaintiff and the putative class.

10             MR. DICKERSON:  Good afternoon, Your Honor.  This is

11   Derin Dickerson with Alston & Bird on behalf of Defendants

12   Grand Canyon Education and the individual defendants.

13             MS. ZAVAREEI:  Good afternoon, Your Honor.  Hassan

14   Zavareei also on behalf of plaintiff.

15             MS. SPERLING:  And this is Elizabeth Sperling with

16   Alston & Bird, also on behalf of Defendants Grand Canyon

17   Education and the individual defendants.

18             THE COURT:  Okay.  Good afternoon.  This is Judge

19   Rayes.  This is the time for oral argument on two motions, the

20   motion to strike and the motion to dismiss.

21             Who will be arguing on behalf of the plaintiffs?

22             MS. SIMPLICIO:  Good afternoon, Your Honor.  Kristen

23   Simplicio.  I'll be arguing for the plaintiff.

24             MR. DICKERSON:  And good afternoon, Your Honor.  This

25   is Derin Dickerson.  I will be arguing the motion to dismiss on

1    behalf of the defendants.

2           THE COURT:  Okay.  Well, Mr. Dickerson, these are your

3    motions.  Each side will have 15 minutes.  You can split it up

4    however you want as far as how much time you want to spend.

5           I've read the motions, the response, and the reply,

6    and I'm ready to hear your argument.

7           MR. DICKERSON:  Thank you, Your Honor.  Derin

8    Dickerson, again.

9           This is a putative class action in which plaintiff

10   alleges that she was misled by a university counselor into

11   enrolling in a graduate degree program.  Plaintiff's claim is

12   based on a single conversation with a single counselor.

13          Despite that, she has sued the university, a service

14   provider, and its CEO, CFO, and COO on behalf of a class of all

15   students who took online graduate programs.  She asserts claims

16   for RICO and violations of California's trio of consumer

17   protection statutes.

18          Plaintiff is attempting to convert her isolated

19   experience into a far-reaching criminal enterprise, but her

20   allegations don't support this.  She borrows the greatest hits

21   of allegations against the for-profit higher education industry

22   from other cases and strings those together with innuendo and

23   conclusions and then trots out a RICO scheme.

24          But none of those allegations relate to anything

25   plaintiff experienced or has any knowledge of.  This is a

1   complete abuse of the RICO statute.  As one circuit court aptly

2   observed, RICO does not cover all instances of wrongdoing;

3   rather, it is a unique cause of action that is concerned with

4   eradicating organized, long-term, habitual criminal activity.

5           The defendants, as Your Honor knows, have moved to

6   dismiss on several grounds, all stemming from plaintiff's

7   failure to satisfy the pleading standards of Rule 9(b) and

8   Rule 8, as articulated by *Iqbal/Twombly*.

9           As the Court mentioned, Your Honor has reviewed our

10  briefs, so I'm not going to go over a detailed recitation of

11  our arguments.  But there are a number of primary problems with

12  plaintiff's claims that I would like to highlight.

13          First --

14          THE COURT:  Okay.

15          MR. DICKERSON:  -- the entire premise of plaintiff's

16  complaint is faulty.  And this fundamental error is revealed

17  throughout the complaint, and with particular clarity in

18  paragraph 89 of the complaint, where she alleges:  Without the

19  form of accreditation required to qualify the students for

20  licensure and/or practice in regulated professions, the

21  university's online degree programs are worthless to the

22  students in these fields.

23          Your Honor, it is categorically false that GCU lacks

24  the proper form of accreditation to qualify students for

25  licensure.  California --

1          THE COURT:  Let me interrupt you.

2          Let me ask:  Isn't that a question of fact?  How can

3  I -- if they make the allegations in the complaint, don't I

4  have to accept it as true?

5          MR. DICKERSON:  No, Your Honor, because that is a

6  matter of law.  California's Business and Professions Code

7  requires that in order for a program to qualify for licensure,

8  the institution must be accredited by a regional or national

9  institutional accrediting agency recognized by the Department

10  of Education.

11          There's no dispute -- in fact, it's alleged in the

12  complaint -- that GCU is so accredited.  That's just a matter

13  of law and concession by plaintiff's counsel.  There's nothing

14  within the California law that requires an institution to have

15  programatic accreditation in order for its students to be

16  qualified for licensure.

17          THE COURT:  Okay.  But one of the arguments you're

18  making is that their core premise is false, which is a question

19  of fact.  But you're arguing that the factual allegations in

20  the complaint are not entitled to the presumption of truth

21  because they contradict California statutes?

22          MR. DICKERSON:  Well, Your Honor, the Court does not

23  have to accept as true any statements of the law.  The

24  California law is clear on what is required in order for a

25  school to qualify its students for licensure.

1          And they allege --

2          THE COURT:  But you say -- oh, go ahead.  I'm sorry.

3   Go ahead.

4          MR. DICKERSON:  I'm sorry.

5          THE COURT:  Go ahead.  Finish up.  They allege what?

6          MR. DICKERSON:  They allege that programatic

7   accreditation is necessary, and that's simply inconsistent with

8   California law.  And the Court doesn't have to accept as true

9   plaintiff's incorrect statements of the law.

10         THE COURT:  Okay.

11         MR. DICKERSON:  Moreover, plaintiff's articulated

12  theory reveals just one of the many reasons that a class could

13  never be certified.  That's because students pursue degrees for

14  various reasons, including to pursue employment opportunities

15  that don't require licensure.  And this is obviously a class

16  certification issue that's not ripe before the Court, but it's

17  notable that hundreds of schools across the country, including

18  Arizona State University and University of Southern California,

19  offer similar master's in psychology degrees that do not lead

20  to licensure.

21         THE COURT:  Let me focus your argument.  I don't want

22  to hear facts that aren't alleged in the complaint.

23         MR. DICKERSON:  Sure.

24         THE COURT:  So you're not helping your argument by

25  bringing these things up.  That's not helping me either, so

1    focus your arguments on the basis for what you're arguing.

2    You're arguing that they failed to state a claim.  So let me

3    hear about that.

4            MR. DICKERSON:  Understood, Your Honor.

5            The second major problem with plaintiff's claims is

6    that she attempts to support her broad claims by citing to

7    activities and policies that have nothing to do with the fraud

8    she claims she experienced.

9            She devotes dozens of paragraphs to discussions of

10   GCU's conversion to nonprofit status, for example.  Putting

11   aside the fact that there is nothing illegal or nefarious about

12   converting to a nonprofit, the conversion occurred after her

13   application to and enrollment in GCU, and thus, it couldn't

14   possibly form the basis of any of her claims.

15           She devotes dozens of pages to the history of the

16   college, the individual's employment, other for-profit higher

17   education institutions, and a whole range of things that have

18   nothing do with the fraud that she alleges that she

19   experienced.

20           And so, you know, she wants to rely on the fact that

21   her complaint is 79 pages and over 200 paragraphs, but the vast

22   majority of those paragraphs are not relevant to the fraud that

23   she alleges in the complaint.

24           And then the third major problem with plaintiff's

25   claims is that throughout the complaint she relies on

1   conclusion after conclusion.  Nearly all of the complaint is

2   conclusory with the exception of a handful of allegations about

3   her own enrollment, which is, unsurprisingly, the only thing

4   that plaintiff is familiar enough with herself to allege facts

5   about.

6           The allegations in the complaint bear a striking

7   resemblance to the allegations the Supreme Court, in *Twombly*

8   and *Iqbal*, rejected as conclusory.  In fact, the Supreme Court

9   in *Iqbal* found that allegations that the defendant was, quote,

10  the principal architect of this invidious policy and that the

11  other defendant was, quote, instrumental in adopting and

12  executing it, were insufficient to state a claim.

13          And those are exactly the types of allegations that

14  are included throughout the complaint.  Nothing specific, but

15  conclusions that the defendants directed or agreed without any

16  actual facts that would actually support the claims for which

17  plaintiff is proffering.

18          THE COURT:  Let me ask --

19          MR. DICKERSON:  In fact, plaintiff admits that she --

20          THE COURT:  Whoa.  You argue -- I want to talk about

21  the unjust enrichment claim for a second.

22          You argue that the unjust enrichment claim fails

23  because the parties' relationship is governed by a contract,

24  the enrollment agreement.  Is that alleged in the complaint?

25          MR. DICKERSON:  The plaintiff alleges that she

1   enrolled in the -- within the institution.  She does not

2   specifically identify the enrollment agreement.  It was

3   attached to one of our prior filings before the Court in the

4   record, and it is a document that is vaguely referenced in the

5   agreement such that it could be considered in connection with

6   the motion to dismiss.

7          THE COURT:  Okay.

8          MR. DICKERSON:  Plaintiff admits that she had limited

9   knowledge of the facts, and she hopes to get to discovery to

10  hopefully uncover some wrongdoing.

11         But the Supreme Court warned against this also in the

12  *Twombly* case.  In that case, the Supreme Court recognized that

13  discovery is expensive, and the Court said this:  When the

14  allegations in a complaint, however true, could not raise a

15  claim of entitlement to relief, this basic deficiency should be

16  exposed at the point of minimum expenditure of time and money

17  by the parties and the Court.

18         And that time in this case is now.  The plaintiff

19  should not be permitted a license to engage in a fishing

20  expedition in hopes to uncover some wrongdoing.

21         Just for a moment, I'd like to address the RICO claim

22  specifically, because there are a number of reasons why --

23         THE COURT:  Whoa.  You have five minutes left, so use

24  your time however you want.

25         MR. DICKERSON:  Okay.  Sure.

1        You know, at best, plaintiff has alleged a single

2   allegation of fraud, and she has not even alleged that with

3   particularity.  Despite hundreds of paragraphs of irrelevant

4   information and material, she summarizes only one

5   pre-enrollment conversation with Mr. Granitz, and that summary

6   does not adequately allege any fraudulent misrepresentation.

7        First, she takes the inappropriate impressionistic

8   approach that courts have repeatedly held as deficient.

9   Plaintiff doesn't actually allege that Granitz told her that

10  the programs were accredited by the APA or California -- which,

11  by the way, neither of those accreditations even exist in this

12  context -- but she alleges that it was just her impression, in

13  other words, that she was assured that that was the case.

14       And she prefaces the actual statements that Granitz

15  allegedly made with the phrase "In particular."  And when you

16  look at the statements after that term, they are all true.  And

17  it reveals that she was really just confused by the

18  conversation.  Her confusion, which persists today, caused her

19  to assume something that Granitz did not say.

20       This is further obvious from her allegations further

21  on of what he did say, that she could teach psychology, pursue

22  a PhD, or other opportunities.  These are all her own

23  allegations, which suggests that he was not answering a

24  question about licensure.  He was asking a question --

25  answering a question about what she might be able to do with a

1    degree in the program which she took.

2            Second, it's important that -- to understand that to

3    be actionable, a fraudulent statement has to be material, and

4    the statements about APA accreditation, California

5    accreditation aren't actionable because neither of those

6    accreditations even exist in this context and aren't required

7    for licensure, as I mentioned before.  They can't possibly

8    be --

9            THE COURT:  Whoa, whoa.  Let me ask you this:  Aren't

10   we required to resolve all reasonable inferences in the favor

11   of the plaintiff?

12           MR. DICKERSON:  Yes, Your Honor is required to accept

13   as true factual allegations but not conclusions.  And --

14           THE COURT:  What about inferences?

15           MR. DICKERSON:  Yes, but the inferences have to be

16   reasonable.  As *Iqbal* and *Twombly* both say, the Court isn't

17   required to make unreasonable inferences, only reasonable

18   inferences.

19           THE COURT:  So we're getting into how to interpret

20   three statements.  Don't we have to ask whether these

21   statements could reasonably be interpreted the way she alleges?

22           MR. DICKERSON:  Well, I think, again, the question is

23   whether the inferences are reasonable, and I think we have to

24   look at her own words in those statements.  First she says that

25   she was assured that the programs were accredited by the APA

1  and California, and courts have consistently held that such

2  impressionistic allegations are insufficient to state fraud.

3          And then the next sentence, she says, "In particular,"

4  and then she says this is what he told her, and those are the

5  actual allegations.  She said that he told her the program was

6  covered under HLC's accreditation.  That is absolutely true.

7          That's actually alleged elsewhere in the complaint,

8  that he told her that she'd be able to work in her state with

9  HLC accreditation.  That is true, as a matter of California

10 law, as I mentioned in the actual regulation as cited in our

11 brief.

12         He said that she could teach psychology, obtain a PhD,

13 or pursue a variety of other opportunities.  Also true.

14         So a fraudulent statement not only has to be stated

15 with particularity, you have to actually state something that's

16 untrue, something that is fraudulent.  And that, plaintiff

17 hasn't done in that paragraph.

18         THE COURT:  Okay.  You have one minute left.

19         MR. DICKERSON:  So I'll end with this:  It would set a

20 dangerous precedent to allow this sort of allegation of fraud

21 to be spun into a RICO claim.  I mean, plaintiff's allegations

22 can be boiled down to:  Defendants run a school, and one of

23 their counselors lied to me once.

24         If we allowed those sorts of allegations to permit

25 company leaders to be pulled into a RICO lawsuit, then every

1  school in the country and their leaders would be susceptible to

2  these sorts of lawsuits.

3          Plaintiff, apparently for strategic reasons, opted not

4  to pursue a simple fraud claim.  But she certainly hasn't

5  satisfied her burden at this stage of stating a claim for RICO

6  or violations of California's consumer protection statutes.

7          The final thing I'll say is that GCU didn't even exist

8  as an entity when plaintiff enrolled in the school, and so any

9  claims against GCU necessarily must be dismissed.

10         THE COURT:  All right.  Thank you.

11         Ms. Simplicio.

12         MS. SIMPLICIO:  Thank you, Your Honor.  So --

13         THE COURT:  Let me start with a question for you, and

14  bear with me.  This is a long question with many parts, so just

15  hang in there.

16         MS. SIMPLICIO:  Okay.

17         THE COURT:  And I want to make sure you understand my

18  question as I go along.

19         Now, Rule 8(a), that rule requires a complaint to

20  contain, quote, a short and plain statement of the claim

21  showing that the pleader is entitled to relief, end quote.

22         Rule 9(b) requires you to be specific about the

23  factual basis for fraud.  And complaints are meant to be short

24  and plain.  They are not legal briefs.  They're supposed to

25  give everyone fair notice of what claims you are bringing and

1    what the factual basis for those claims is.

2          Now, if we had an ideal complaint, it would identify

3    the elements of the claim being alleged and the specific

4    factual allegations that plausibly establish each of those

5    elements.

6          Further, Rule 10(b), that rule requires you to state

7    your claims in separately numbered paragraphs, each limited, as

8    far as practical, to a single set of circumstances.

9          Let's talk about your complaint.  Your complaint is 78

10   pages.  It's 282 paragraphs.  And based on defendant's motion

11   to strike, it looks like a lot of these paragraphs are

12   arguments rather than facts, and they go into the weeds of

13   matters that might be exponential or only tangentially related

14   to the claims you're making.

15         Defendants have moved to strike over 100 of the

16   paragraphs in your complaint.  Your complaint seems to flout

17   Rule 10(b).  Instead of stating a single factual allegation

18   that defendants could reasonably be expected to admit or deny,

19   many of your paragraphs take up more than half a page and

20   contain various different statements, some of which are factual

21   and others are argument.

22         Portions of the complaint read more like a treatise on

23   the for-profit college industry than a short and plain

24   statement entitling you to relief.

25         It seems like it would be easier to figure out whether

1   you pled sufficient facts to support your claim if your

2   complaint was sheared of all the excess and focused just on

3   those facts material to each element of the claims alleged.

4          Would you agree that there's -- that this complaint

5   could be cleaned up and be made more practical and in

6   compliance with the federal rules?

7          MS. SIMPLICIO:  Okay.  Thank you, Your Honor, for

8   that.

9          So I will say, of course, any -- any brief or

10  complaint can always be trimmed in some respect.  That said --

11         THE COURT:  No, no, no.

12         MS. SIMPLICIO:  -- we are alleging --

13         THE COURT:  Whoa, whoa, whoa.  Let me interrupt you.

14         This isn't like any other complaint I've seen.  This

15  complaint is more like a brief in a complaint.  And I'm

16  concerned about how the defendants are supposed to admit or

17  deny the paragraphs in this complaint when some of these

18  paragraphs are volumes, and certainly more than a single

19  allegation, and contain information that doesn't even relate to

20  the conduct of the particular defendants.

21         I'm not sure how these defendants reading this

22  complaint can reasonably anticipate the scope of the defense

23  they need to mount.  I'm just concerned about this complaint

24  has got so much in it that doesn't need to be there, and it's

25  not set out in a way that can be easily responded to in a way

1    that the defendants can specifically say, for this paragraph,

2    this is what our response is, without hitting two or three

3    different things at one time.

4           So I'm asking you, can't you clean this up?

5           MS. SIMPLICIO:  Your Honor, if you would like us to

6    try to trim some portions of it, we absolutely can.

7           I -- that said, I do want to note that RICO claims are

8    somewhat complicated, and to sort of explain the scheme --

9           THE COURT:  Whoa, whoa, whoa, whoa, whoa.  Let me --

10   I'm sorry.  I apologize.

11          I've seen lots of RICO complaints.

12          MS. SIMPLICIO:  Uh-huh.

13          THE COURT:  And they are practically always pled

14   within the rules as set forth in 8(a), 9(b), and 10(b).  This

15   one, it isn't.  This has a lot of stuff in there that doesn't

16   need to be there, and it's not put in a way that is easy to

17   understand or for us to rule on this motion and for the

18   defendants to defend because it's just so much in there that

19   it's hard to gather and put it in a way that's manageable.

20          MS. SIMPLICIO:  Uh-huh.

21          Okay.  If I may, Your Honor, I just want to maybe try

22   to address a couple of points.  We can certainly look at trying

23   to focus the complaint on the next round.  But I think there's

24   a few points that were maybe raised in the defendants' motion

25   to strike that I wanted to address so that maybe we can come to

1   get -- to find out if these are areas you would like us to

2   focus on or perhaps explain why they are in the complaint.

3           And so I'll start with the nonprofit/for-profit

4   conversion issue.

5           First, there's a couple of things here.  The -- there

6   was only one entity that existed at the time Ms. Ogdon enrolled

7   in September of 2017, but during the course of her enrollment,

8   the entity split in half.  And one became -- you know, we

9   allege that they created this essentially for-profit front and

10  that GCE was in the background.

11          GCU was providing the educational opportunities,

12  providing the education, whereas GCE was the one that enrolled

13  her.  So explaining their relationship and how that came to be

14  is relevant to showing why both of these defendants need to be

15  in the case, because one made the false advertising, then split

16  in half, and the other sort of carried out the -- provided the

17  substandard education that forms part of the basis of these

18  allegations.

19          It also relates to the way in which the defendants

20  tried to basically defraud students by getting around

21  employment rules and other regulations that were designed to

22  rein in for-profit educees.

23          So we put that in there.  We can certainly look to

24  focus that somewhat more, but if Your Honor has further

25  questions about that particular allegation, I'm happy to talk a

1    little more about them.

2            THE COURT:  I'm not -- let me just give you an

3    example.  Paragraph 49, that talks about different schools

4    getting sued by the AGs of other states.

5            MS. SIMPLICIO:  Uh-huh.

6            THE COURT:  What does that have to do with GCU and the

7    fraud you're alleging?

8            MS. SIMPLICIO:  Well, we wanted to show that -- that

9    the -- that, one, this is a problem within the industry in

10   general, to sort of support -- we understand that we are making

11   RICO allegations.  We wanted to support the showing that this

12   is a plausible thing, that there are a lot of fraudulent

13   incentives, and that by structuring a nonprofit, that there are

14   perverse incentives to take money from the student loan

15   programs, defraud students and put them into -- you know, send

16   them back to Wall Street investors, that it is a common

17   industry trend.

18           THE COURT:  And that supports your fraud claim?

19           MS. SIMPLICIO:  We believe it does, Your Honor, just

20   because it demonstrates that this is something that is common

21   in the industry and that the allegations we have here are

22   plausible.  But if Your Honor would prefer that we remove it,

23   we are -- we can certainly do that, and we can make similar

24   edits on the next round.

25           THE COURT:  Now let's talk about your unjust

1   enrichment claim.  You argue that the motion to dismiss should

2   be denied because the enrollment agreement isn't in the

3   complaint.

4           And that might be true, but defendant just told me the

5   agreement is elsewhere in the record, and it sure seems like a

6   waste of time to keep this claim alive if it's clear that there

7   is an agreement, even if you chose not to bring it up in your

8   complaint.

9           So do you actually intend to dispute the existence of

10  the enrollment agreement?

11          MS. SIMPLICIO:  We do agree that there is an

12  agreement.  We -- there may be additional costs and fees that

13  were imposed that are outside the scope of the agreement.  It

14  may also be that the agreement is not enforceable and that

15  unjust enrichment can be pled in the alternative.

16          THE COURT:  So my question is you -- you indicated

17  that -- wouldn't you need to allege a breach of contract if

18  you're going to rely on that agreement?  Just do it in the

19  alternative?

20          MS. SIMPLICIO:  Yeah, we have -- well, because it is

21  an equitable remedy, we believe we can allege it as an

22  alternative to false advertising and other statutory claims.

23          THE COURT:  So you're saying that you're going to

24  bring an unjust enrichment claim as an alternative theory, but

25  not on an alternative theory to a breach of contract claim.  Is

1    that what you're saying?

2              MS. SIMPLICIO:  Yes, as an alternative theory to

3    claims at law.  It's an equitable claim.

4              THE COURT:  All right.

5              Okay.  Go ahead.

6              MS. SIMPLICIO:  Okay.  The other point I wanted to

7    make was with respect to the defendants' arguments on

8    accreditation.  Just wanted to sort of clear up that we do use

9    the term "professional accreditation."  We describe that to

10   mean both the -- it's explained in paragraphs 77 to 81, that it

11   is the standards -- it is both the --

12             There are entities that accredit institutions to

13   provide certain kinds of professional degrees, like the ABA

14   accredits law schools.  There are specialized accrediting

15   agencies that accredit schools for purposes of providing

16   education to become mental health counselors, which is what

17   Ms. Ogdon wanted to be.

18             It also refers to, generally, state licensing

19   standards, which sometimes borrow from the requirements set out

20   by these professional accreditors and other times just set out

21   standards that track or are similar to those kinds of

22   standards.  And defendant did not -- has neither American --

23   neither accreditation from the American Psychology Association,

24   nor was it providing a program that met these standards that

25   one needed to meet to sit for licensure in California.

1          And so Ms. Ogdon made clear when she was speaking to

2    defendants' representatives on the phone that she was

3    interested in becoming a licensed mental health counselor in

4    the state of California.  She, you know, asked several

5    questions to that extent, and the defendants consistently

6    misdirected and confused her and omitted the truth.  They never

7    disclosed to her, no, this program will not qualify you to

8    become a --

9          THE COURT:  Whoa, whoa.  Let me interrupt you, and I

10   apologize.

11         You're speaking way too fast.  Can you slow down,

12   please.

13         MS. SIMPLICIO:  I'm sorry.  I'm sorry, Your Honor.

14         THE COURT:  Go ahead.  I interrupted you.  Just slow

15   down.

16         MS. SIMPLICIO:  Yes.  So that's what the gist of her

17   claims are.

18         I know the defendants have pointed to the fact that

19   they had this generalized accreditation from the Higher

20   Learning Commission, but that wouldn't prepare her to become a

21   mental health counselor.

22         Those allegations were detailed in the complaint, that

23   that's what she wanted to do, that's what she told Grand

24   Canyon, and Grand Canyon did not tell her, you cannot become

25   that.  You cannot work in that field if you attend our school.

1          They made it -- they made it sound to her like she

2    could do that.  And we plead that in there, and those facts

3    should be accepted as true at this stage.

4          With respect to the claim generally, it does seem like

5    defendants have tried to confuse both Ms. Ogdon's claims with

6    whether or not we can prove class certification or whether or

7    not the allegations here rise to the level that one would need

8    to meet at class certification.

9          This is a Rule 12 motion.  With respect to

10   Ms. Ogdon --

11         THE COURT:  Whoa, slow down.  Whoa, whoa, stop.  Slow

12   down, please.

13         MS. SIMPLICIO:  Sorry, Your Honor.

14         With respect to Ms. Ogdon, we have detailed all of the

15   elements of her claims that there was false advertising.  We've

16   explained in our -- on pages 4 to 5 of our opposition how it is

17   we satisfy Rule 9(b) as to her.

18         And I want to be clear that there's two kinds of --

19   there's two types of claims.  There are her California claims,

20   which are only against the two schools, against, I guess, GCE

21   and GCU, and it's -- and then the RICO claims, which are

22   against the three individuals as well as the two schools.

23         So with respect -- the fact that defendants have said,

24   oh, well, she hasn't satisfied 9(b) as to the California false

25   advertising claims, in those instances, we do plead in the

1   complaint that the allegations were being directed by an

2   employee of what was then Grand Canyon University but is now

3   GCE.  And, you know, we plead all of the sort of details there.

4          So the fact that there are -- you know, defendants

5   seemed to take issue with the fact that we haven't alleged 9(b)

6   for these -- for the California claims.  Those are -- those are

7   very simple because it is -- does not involve the need to plead

8   all the individual defendants.

9          With respect to 9(b) as to RICO, a couple of comments.

10  One is that there's no absolute requirement that the plaintiffs

11  plead that each defendant personally committed two acts of

12  fraud or wire fraud or mail fraud.  That's something defendants

13  have raised in their reply.

14         And the standard actually -- and this is a case from

15  Arizona that was decided a couple of months ago.  I can read

16  you the -- I'm going to -- the plaintiff's name is *Munderloh v.*

17  *Biegler*.  The Westlaw cite is 22 Westlaw 901408.

18         In that case, it collects a lot of recent California

19  and Arizona and Ninth Circuit law that talks about what the

20  standard is to satisfy 9(b) and hold individual defendants

21  accountable at this stage, and it's just basically whether or

22  not the defendants were generally aware, whether they were

23  knowing participants in the scheme, whether they had intent,

24  and whether the fraud was occurring while they were

25  participating.

1        And we have explained --

2        THE COURT:  Well, thank you very much.

3        MS. SIMPLICIO:  Yes.

4        THE COURT:  I think we're done.

5        MS. SIMPLICIO:  Okay.

6        THE COURT:  Both of you did a nice job.  I'll take it

7   under advisement.

8        We'll stand in recess.

9        MS. SIMPLICIO:  Okay.  Thank you, Your Honor.

10        THE COURT:  Bye-bye.

11        (Proceedings concluded at 3:02 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I, JENNIFER A. PANCRATZ, do hereby certify that I am

4    duly appointed and qualified to act as Official Court Reporter

5    for the United States District Court for the District of

6    Arizona.

7          I FURTHER CERTIFY that the foregoing pages constitute

8    a full, true, and accurate transcript of all of that portion of

9    the proceedings contained herein, had in the above-entitled

10   cause on the date specified therein, and that said transcript

11   was prepared under my direction and control to the best of my

12   ability due to the limitations in technology.

13         DATED at Phoenix, Arizona, this 21st day of July,

14   2022.

15

16

17
                        s/Jennifer A. Pancratz_____
18                      Jennifer A. Pancratz, RMR, CRR, FCRR, CRC

19

20

21

22

23

24

25