**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Katie Ogdon,<br><br>        Plaintiff,<br><br>v.<br><br>Grand Canyon University Incorporated, et al.,<br><br>        Defendants. | No. CV-22-00477-PHX-DLR<br><br>**ORDER** |

In her First Amended Complaint ("FAC"), Plaintiff Katie Ogdon accuses Defendants Grand Canyon University Incorporated ("GCU"), Grand Canyon Education Incorporated ("GCE"), and three of GCE's corporate officers, Brian Mueller, Dan Bachus, and Stan Meyer, of engaging in a racketeering scheme to defraud students by advertising programs in professions traditionally subject to state regulation as being suitable for employment even though those programs do not meet the licensure standards in the states where students would seek employment. (Doc. 18.) The Court previously granted in part Defendants' motion to dismiss. (Doc. 92.) At issue is Ogdon's motion for reconsideration of the portion of the Court's order dismissing her claims under the federal Racketeer Influenced and Corrupt Organizations ("RICO") act and part of her claim under California's Unfair Competition Law ("UCL") (Doc. 71), which is fully briefed (Doc. 101). The parties are familiar with the facts, which are detailed in the Court's prior order and will

not be repeated here except as necessary to explain the Court ruling. As explained below, the Court grants Ogdon's motion.

## I. Legal Standard

Motions for reconsideration should be granted sparingly. *Defenders of Wildlife v. Browner,* 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.,* 689 F. Supp. 1572, 1573 (D. Haw. 1988). Ordinarily, a motion for reconsideration will be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g). But "as long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).

## II. Analysis

Ogdon's motion for reconsideration is not based on new facts and, although she cites additional legal authority, none of it is new in the sense that it was unavailable at the time the Court ruled on Defendants' motion to dismiss. The Court nonetheless is persuaded that it should not have dismissed Ogdon's RICO claims and therefore finds sufficient cause to grant her motion for reconsideration.

The FAC alleges RICO claims under 18 U.S.C. § 1962(c) and (d).[1] To state a plausible § 1962(c) claim, Ogdon must allege that Defendants "participate[d] in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity[.]" *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Section 1962(d), which makes it unlawful to conspire to violate RICO's other provisions, requires allegations plausibly establishing the existence of an agreement to commit such violations.

---

[1] She also brought a claim under § 1962(a), but voluntarily withdrew that claim in response to Defendants' motion to dismiss. (Doc. 67 at 20 n.14.)

In their motion to dismiss, Defendants argued that Ogdon failed to adequately allege: (1) a pattern of racketeering activity; (2) the existence of a RICO enterprise; (3) that Defendants conducted the enterprise's affairs, rather than their own; (4) that Ogdon's injuries were caused by the alleged RICO violations; and (5) that Defendants agreed to violate RICO. (Doc. 61-1 at 16-20.) In dismissing Ogdon's RICO claims, the Court accepted two of these arguments—that Ogdon failed to plausibly allege that Defendants conducted the affairs of the alleged enterprise, rather than their own affairs, or that Defendants each engaged in at least two predicate acts of racketeering activity—and found it unnecessary to reach the others. (Doc. 92 at 8-9.) On reconsideration, the Court is persuaded that these conclusions were erroneous.

**A. Conduct of an Enterprise**

On the first issue, the Court concluded:

> the FAC plausibly alleges that Defendants fraudulently induced Ogdon into enrolling and maintaining her enrollment at the University. But the FAC does not plausibly allege that Defendants' conduct were anything other than their ordinary business affairs. Indeed, Ogdon alleges that the "common purpose" underpinning the alleged enterprise was to enrich GCE, its officers, and its shareholders. (Doc. 18 ¶¶ 51-55.) But profit maximization is a normal purpose of a for profit corporation like GCE. Although Defendants are not entitled to conduct their business affairs in a fraudulent manner, doing so does not transform those affairs into the conduct of an association-in-fact enterprise that is separate and distinct from the business itself.

(Doc. 92 at 8.) The Court failed to fully appreciate that "[i]t will often be the case that the interests of the enterprise are congruent with those of its members; such congruence presumably provides the incentive for members to participate in the enterprise." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 378 (3d. Cir. 2010). "As such, the fact that conduct may be consistent with each participant's own interests does not necessarily mean that the conduct cannot also plausibly reflect the affairs of an enterprise." *Advanced Reimbursement Solutions LLC v. Aetna Life Ins. Co.*, No. CV-19-05395-PHX-DLR, 2022 WL 889058, at *8 (D. Ariz. Mar. 25, 2022). Instead, "if defendants band together to commit [violations] they cannot accomplish alone . . . then they cumulatively

are conducting the association-in-fact enterprise's affairs, and not [simply] their own affairs." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d at 378 (internal quotation and citation omitted; alterations in original). Such is the case here, where Ogdon alleges that the enterprise's common purpose was to enrich its members via a scheme to defraud graduate students by misrepresenting the nature of the University's academic offerings.

### B. Pattern of Racketeering Activity

On the second issue, the Court concluded that the "FAC does not allege each Defendant committed at least two acts of racketeering activity." (Doc. 92 at 8.) The Court is persuaded that Ogdon "need not allege that each RICO defendant . . . personally committed at least two acts of mail or wire fraud to establish a pattern of racketeering." *Munderloh v. Biegler GmbH*, No. CV-21-08004-PCT-GMS, 2022 WL 901408, at *10 (D. Ariz. Mar. 28, 2022) (quoting *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 533 F. Supp. 3d 858, 871 (N.D. Cal. 2021)). Instead, she only needs to plead facts plausibly indicating that each Defendant "was (1) a knowing participate in a scheme to defraud, (2) that [they each] participate[d] in the scheme with the intent to defraud, and (3) that a co-schemer's acts of mail and wire fraud occurred during [their] participation in the scheme and were within the scope of the scheme."[2] *Id.* (quoting *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *13 (N.D. Cal. Oct. 30, 2017)). Ogdon has done so here.

"The elements of mail fraud and wire fraud are '(1) a scheme to defraud, (2) the use of the mails or wires to further that scheme, and (3) the specific intent to defraud.'" *Munderloh*, 2022 WL 901408, at *10 (quoting *In re JUUL Labs*, 497 F. Supp. 3d at 595). Mail or wire communications that themselves contain no false information may nonetheless supply the "use of the mails or wires" element so long as those mailings or wire communications are made in furtherance of the scheme to defraud. *See In re*

---

[2] This conclusion is not inconsistent with this Court's decision in *Aetna*. There, the Court dismissed the plaintiff's RICO claims because the complaint failed to allege at least two predicate acts of mail or wire fraud per enterprise. *Aetna*, 2022 WL 889058, at *9. The Court did not impose a requirement that the plaintiff plead at least two predicate acts of mail or wire fraud per participant in the enterprise.

*WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F.Supp.2d 880, 913 (C.D. Cal. 2012).

Ogdon's FAC plausibly alleges the existence of a scheme to defraud prospective students by misrepresenting the nature of the University's academic offerings. Ogdon alleges that Defendants knew that their recruiters were misleading prospective students about whether the University's professional degree programs qualified for licensure in the states in which those students intended to work, but encouraged them to do so in order to increase enrollment numbers. Because Federal Rule of Civil Procedure 9(b) allows intent and knowledge to be pled generally, these allegations are sufficient to make Defendants' intent to defraud plausible. *See Munderloh*, 2022 WL 901408, at *11. And Ogdon alleges numerous uses of interstate wires by a GCE recruiter, Mr. Granitz, that furthered this fraudulent scheme and occurred during the scope GCU's, Mueller's, Bachus', and Meyer's alleged participation in the scheme.[3]

For these reasons, the Court was wrong to dismiss Ogdon's RICO claims for the reasons previously given. The Court must now address the alternative arguments for dismissal that Defendants raised in their motion to dismiss, and which the Court did not reach in its prior order.

**C. Existence of RICO Enterprise**

Defendants argue the FAC fails to plausibly allege the existence of an association-in-fact enterprise (Doc. 61-1 at 18.) The Court disagrees. "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue

---

[3] In their reply in support of their motion to dismiss, Defendants argue that, because Mr. Granitz's communications with Ogdon occurred during the summer or fall of 2017, they are not sufficiently continuous to establish a pattern of racketeering activity. (Doc. 71 at 11 n.8.) For support, Defendants rely on *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000). But in *Howard*, the Ninth Circuit drew a distinction between closed-ended continuity, meaning "a series of related predicates extending over a substantial period of time," and open-ended continuity, meaning "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 750 (citations omitted). The Court understands Ogdon's complaint to allege that she was one of many victims of an open-ended fraudulent scheme. Her allegations are sufficient to plausibly show that Defendants' recruiting practices reflect their "regular way of doing business" and will continue. *Id.* (citations omitted).

- 5 -

the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009). The FAC alleges that the purpose of the association-in-fact enterprise is to enrich its members by inducing students to enroll in the University's graduate programs based on fraudulent or misleading recruitment tactics involving interstate use of the mails and wires. The FAC also alleges the relationships among the Defendants associated with the enterprise, and Defendants do not argue that the FAC fails to allege longevity sufficient to permit Defendants to pursue the enterprise's purpose.

**D. Causation**

Defendants argue that the FAC does not plausibly allege Ogdon's injuries were proximately caused by their alleged racketeering activity. (Doc. 61-1 at 19-20.) This argument comes in two flavors.

First, Defendants argue that, to the extent Ogdon's RICO claims are based on an alleged fraudulent scheme involving affirmative misrepresentations about the accreditation of the University's graduate degree programs, those misrepresentations could not plausibly have caused her injuries because Ogdon could have researched accreditation and licensing requirements herself. (Doc. 61-1 at 20.) At bottom, this is an argument that Ogdon's reliance on Mr. Granitz's representations was not reasonable because complete and accurate information was accessible elsewhere. The Court previously rejected Defendants' reliance arguments, explaining that "reasonable reliance generally is a fact question inappropriate for resolution at the motion to dismiss stage." (Doc. 92 at 7.) The Court sees no reason to rule otherwise when these arguments are reframed in terms of RICO causation. The FAC plausibly alleges that Ogdon's injuries were proximately caused by Defendants' fraudulent scheme.

Second, Defendants argue that, to the extent Ogdon's RICO claims are based on omissions, they fail because she has not alleged any Defendant owed her a duty of disclosure. "As to whether a duty to disclose must be alleged concerning the alleged omissions, Defendants are correct that a RICO wire fraud claim based on an omission requires the existence of an independent duty to disclose." *MedImpact Healthcare Systems,*

*Inc. v. IQVIA Inc.*, No.: 19cv1865-GPC(LL), 2020 WL 5064253, at *23 (S.D. Cal. Aug. 27, 2020). Ogdon argues that 34 C.F.R. § 668.403 imposes on Defendants a duty to disclose information about students' employment prospects in their field. (Doc. 67 at 19.) Defendants correctly observe, however, that nothing in § 668.403 speaks to disclosures by universities to current or prospective students. Nor does Ogdon explain in her response brief or her FAC how she believes this rule operates to support her duty to disclose theory. Accordingly, the Court agrees with Defendants that, to the extent Ogdon's RICO wire/mail fraud claims are based on omissions, they are inadequately pled because the FAC does not explain the basis for Defendants' alleged duty to disclose. Nothing in this order, however, precludes Ogdon from moving for leave to amend her FAC if she believes she can allege a duty to disclose to support her fraud-by-omission theory.

### E. Conspiracy

Lastly, Defendants argue that the FAC fails to allege a RICO conspiracy claim because Ogdon does not plausibly allege the existence of an agreement to violate RICO. (Doc. 61-1 at 17.) The Court disagrees. "The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002). Here, Ogdon repeatedly alleges that Defendants agreed to engage in the fraudulent scheme, and "the same allegations that demonstrate [their] participation in the enterprise support [Ogdon's] conspiracy claim." *In re Volkswagen*, 2017 WL 4890594, at *17. The FAC's allegations are sufficient to "put each defendant on notice as to how [they] allegedly joined the conspiracy." *Lui Ciro, Inc. v. Ciro, Inc.*, 895 F.Supp. 1365, 1384 (D. Hawai'i 1995) (citation omitted).

### F. UCL Claim

Finally, Ogdon argues that "to the extent the Court reinstates [her] RICO claim, the Court should reinstate the UCL unlawful prong that is predicated on the RICO violation." (Doc. 99 at 6 n.2.) Having found Ogdon's RICO claims were erroneously dismissed, the

Court agrees that her UCL claim predicated on the RICO violation should also be reinstated.

**IT IS ORDERED** that Ogdon's motion for reconsideration (Doc. 99) is **GRANTED** as explained herein.

Dated this 29th day of March, 2024.

Douglas L. Rayes
United States District Judge